MARY NELL HYLTON, Administratrix of the Estate of WILLIAM McKINLEY HYLTON, Deceased, Plaintiff v. THOMAS J. KOONTZ, M.D., SALEM SURGICAL ASSOCIATES, P.A., BENZION SCHKOLNE, M.D., PIEDMONT ANESTHESIA AND PAIN CONSULTANTS, P.A., and MEDICAL PARK HOSPITAL, INC., Defendants

No. COA99-1052

(Filed 20 June 2000)

**Medical Malpractice— Rule 9 certification—telephone conversation**

The trial court erred by dismissing a medical malpractice action where plaintiff's counsel represented to his medical expert in a telephone conversation certain facts about the care provided by defendant and the expert opined that defendant breached the standard of care. This procedure was in full compliance with N.C.G.S. § 1A-1, Rule 9(j); there is no requirement that the expert review the actual medical records prior to expressing his opinion and defendant did not contend that the "facts" presented to the expert were not predicated on such facts as the evidence would reasonably tend to prove.

HYLTON v. KOONTZ

[138 N.C. App. 511 (2000)]

Appeal by plaintiff from order filed 24 June 1999 by Judge W. Douglas Albright in Forsyth County Superior Court. Heard in the Court of Appeals 16 May 2000.

*Young, Haskins, Mann, Gregory & Smith, P.C., by Fred D. Smith, Jr., for plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Joseph M. Stavola and Joseph P. Booth, III, for defendant-appellees.*

GREENE, Judge.

Mary Nell Hylton (Plaintiff), Administratrix of the Estate of William McKinley Hylton (Decedent), appeals from the trial court's dismissal of her suit against Benzion Schkolne, M.D. (Dr. Schkolne) and Piedmont Anesthesia and Pain Consultants, P.A. (collectively, Defendants).

The record and pleadings reveal Decedent was a forty-five-year-old black male, whose medical history included *inter alia* a myocardial infarction (heart attack) and an angioplasty surgery in 1993. On 22 July 1996, Decedent reported to Medical Park Hospital, Inc. suffering from cholecystitis (inflamation of the gall bladder). An outpatient laparoscopic cholecystectomy (gall bladder removal) was scheduled and performed that day on Decedent. Dr. Schkolne was the anesthesiologist for the operation, and surgery commenced at 8:50 a.m. with completion at 9:50 a.m. Decedent was released from the Recovery Room at 10:40 a.m., and his vital signs were assessed after the surgery at 11:00 a.m. and again at 11:50 a.m. At 2:58 p.m., Decedent was found unresponsive to verbal stimuli, and at 3:25 p.m., he was pronounced dead.

Plaintiff's complaint alleges, in pertinent part:

13. The medical treatment provided to . . . [D]ecedent by . . . Dr. Schkolne did not meet the minimum acceptable standard of practice among physicians with similar experience and training as that of . . . Dr. Schkolne who practice in the same specialt[y], to wit: . . . anesthesiology, in Winston-Salem, North Carolina and similar communities in July of 1996 . . . .

. . . .

15. The Defendants' failure to comply with the applicable standard of care resulted in a failure to timely and appropriately diag-

nose and treat the cause of . . . [D]ecedent's post-operative demise on July 22, 1996.

16. The medical care afforded to . . . [D]ecedent on the occasion complained of herein has been reviewed by persons Plaintiff's counsel reasonably expects to qualify as expert witnesses under Rule 702 of the North Carolina Rules of Evidence and who have stated that they are willing to testify that such medical care did not comply with the applicable standards of care.

17. The Defendants' failure to comply with the applicable standard of care resulted in a failure to diagnose the cause of . . . [D]ecedent's post-operative demise, the administration of contraindicated treatment, [and] the failure to provide needed treatment, which proximately caused . . . [D]ecedent unnecessary pain, suffering, mental anguish, and death on July 22, 1996.

Plaintiff's responses to Defendants' Rule 9(j) interrogatories, verified by Plaintiff's expert witness Brian G. McAlary, M.D. (Dr. McAlary), provided Dr. McAlary would "testify that Dr. Schkolne violated the applicable standard of care" in treating Decedent. The responses provided that on July 21, 1998 (the same day Plaintiff filed her complaint), Dr. McAlary was advised of certain "facts" in a telephone conversation with Plaintiff's counsel. Following the presentation of the facts, Dr. McAlary opined that in view of Decedent's medical history and his "serious systemic disease," "the applicable standard of care[] required . . . [Decedent] be admitted for surgery to a[n] in-patient facility where appropriate monitoring and intervention were available for adverse cardiac events [and receive] . . . a cardiology consult."

In response to Defendants' Rule 9(j) motion to dismiss the complaint, the trial court dismissed Plaintiff's claims against Defendants with prejudice. The order provided the following findings of fact:

1. Dr. . . . McAlary is the only expert designated by [P]laintiff for purposes of compliance with Rule 9(j) . . . , relative to the medical care provided by [Defendants].

2. On July 21, 1998, counsel for [P]laintiff presented selected medical information relative to the care of [Decedent] to Dr. . . . McAlary during a telephone conversation.

. . . .

4. Dr. . . . McAlary did not review the actual medical records relative to the medical care at issue herein until some time after the filing of the complaint on July 21, 1998.

Based on these facts, the trial court concluded:

1. Presentation of selected medical information by [P]laintiff's counsel to Dr. . . . McAlary during the telephone conversation of July 21, 1998, was not a "review" of the medical care of [Decedent] for purposes of compliance with Rule 9(j) . . . .

2. Because no "review" of [Decedent's] medical care took place prior to [P]laintiff's filing of her complaint, she has failed to comply with the requirements of Rule 9(j) . . . .

The dispositive issue is whether a review of hypothetical medical facts, presented by plaintiff's attorney, by a qualified medical expert witness is a "review[]" of "medical care" within the meaning of N.C. Gen. Stat. § 1A-1, Rule 9(j).

Rule 9(j) of our Rules of Civil Procedure provides that complaints alleging:

[M]edical malpractice by a health care provider as defined in G.S. 90-21.11 . . . shall be dismissed unless:

(1) The pleading specifically asserts that the *medical care has been reviewed* by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the *medical care* did not comply with the applicable standard of care . . . .

N.C.G.S. § 1A-1, Rule 9(j)(1) (1999) (emphasis added). Even if the complaint contains the necessary Rule 9(j) allegations, the defendant may, through discovery, inquire into whether the Rule 9(j) allegation is supported in fact.[1] *See Trapp v. Maccioli,* 129 N.C. App. 237, 238, 497 S.E.2d 708, 709 (defendant permitted to depose plaintiff's expert to determine if qualified under Rule 702), *disc. review denied,* 348 N.C. 509, 510 S.E.2d 672 (1998). In other words, the defendant is permitted to inquire into whether the medical care received by plaintiff

---

1. Although not applicable to this case, our legislature amended Rule 9(j), effective 31 October 1998, to require plaintiff to provide, at defendant's request, "proof of compliance" with Rule 9(j). Under this amendment, a defendant is permitted to tender "up to ten written interrogatories, the answers to which shall be verified by the expert required under" Rule 9(j). N.C.G.S. § 1A-1, Rule 9(j).

**HYLTON v. KOONTZ**

[138 N.C. App. 511 (2000)]

was indeed reviewed by a Rule 702 witness who is willing to testify "the medical care did not comply with the applicable standard of care."

In this case, there is no dispute the complaint "specifically asserts that the medical care has been reviewed by a person" qualified under Rule 702. Defendants' discovery, however, reveals Plaintiff's expert, Dr. McAlary, did not review Decedent's medical records prior to the filing of the complaint. He instead responded to questions posed by Plaintiff's attorney that were based on a summary of the "facts" regarding Decedent's medical care. Defendants contend this procedure is not in compliance with Rule 9(j). We disagree.

The Rule 9(j) pleading certification must be supported by a "review[]" of "the medical care" by an expert. This clear and unambiguous language leaves " 'no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980)). The plain meaning of words in a statute can be ascertained from dictionaries. *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970). Dictionaries define "review" to include "[t]o look over, study, or examine again . . . [or t]o examine critically," *American Heritage College Dictionary* 1169 (3d ed. 1997), "medical" to include "[o]f or relating to the study or practice of medicine," *id.* at 846, and "care" to include "[a]ttentive assistance or treatment to those in need," *id.* at 212. Thus, utilizing the plain meaning of "medical care has been reviewed," the Rule 9(j) certification must be based upon an examination, by a Rule 702 expert, of the treatment given by a medical practitioner to his patient. A review of a summary of the treatment provided to a patient is sufficient compliance with Rule 9(j), and this summary may be provided to the expert in the form of hypothetical questions.[2] *See Haponski v. Constructor's, Inc.*, 87 N.C. App. 95, 100, 360 S.E.2d 109, 112 (1987) (hypothetical questions

---

2. If, through discovery, it is determined the *summary* provided to the expert was not predicated on such facts as the evidence would reasonably tend to prove, the certification is not well founded and requires dismissal of the complaint. If the summary was predicated on such facts as the evidence would reasonably tend to prove and if the certification is based on the expert's opinion based on that summary, any change of the expert's opinion, after reviewing the medical records, goes to the admissibility of his testimony at trial, and does not affect the Rule 9(j) certification. *See Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711 (although verifying expert may not qualify under Rule 702, his verification may, in some instances, be relied upon to support a Rule 9(j) certification).

are permitted under Rule 705 and may be predicated on "such facts as the evidence reasonably tends to prove"). There is no requirement the expert review the actual medical records prior to expressing his opinion with regard to the medical care provided.

In this case, Plaintiff's counsel presented to Dr. McAlary, during a telephone conversation, certain "facts" about the medical care provided Decedent by Dr. Schkolne. Based on this information, Dr. McAlary opined Dr. Schkolne breached the applicable standard of care for an anesthesiologist. This procedure was in full compliance with Rule 9(j). As Defendants do not contend the "facts" presented to Dr. McAlary were not predicated on such facts as the evidence would reasonably tend to prove, the trial court erred in dismissing Plaintiff's complaint.

Reversed and remanded.

Judges HORTON and HUNTER concur.