GEORGE L. GAUNT, BARBARA G. FIELDS, CENTER FOR REPRODUCTIVE MEDI-
CINE, P.A., DONALD S. HORNER, AND DONALD S. HORNER, P.A., PLAINTIFFS-
APPELLANTS V. DONALD E. PITTAWAY, NANCY O. TEAFF, JACK L. CRAIN, DANIEL
B. WHITESIDES, RICHARD L. WING, CAROLYN B. COULAM, MORGAN D.
GAINOR, CHARLES J. GAINOR, SHELLEY J. MOORE, KEVIN C. MOORE, AND
THE NALLE CLINIC, DEFENDANTS-APPELLEES

No. COA98-823

(Filed 29 August 2000)

**1. Appeal and Error— orders omitted from notice of appeal—
considered under N.C.G.S. § 1-278**

Trial court orders dismissing an action for unfair and decep-
tive trade practices and granting a partial summary judgment on
a defamation claim were reviewed despite their absence from
the notice of appeal where the requirements for applying N.C.G.S.
§ 1-278 were satisfied. The first requirement was met under
N.C.G.S. § 1A-1, Rule 46 when plaintiffs indicated their objection
to the action of the court in their motions opposing defendants'
motions to dismiss even though they did not timely object at the
motions hearing. The second requirement was met in that the trial
court orders did not dispose of the entire case and are interlocu-
tory, with no exception applicable to allow an interlocutory
appeal. Finally, the third requirement was met in that the order
dismissing the unfair practices claim deprived plaintiffs of one of
their claims and affected the judgment.

**2. Unfair Trade Practices— statements by infertility special-
ists—medical professionals excluded from statute**

The trial court did not err by granting summary judgment for
defendants on an unfair and deceptive practices claim arising
from a newspaper story about in vitro fertilization. Plaintiffs have
no claim against defendants under N.C.G.S. § 75-1.1 because med-
ical professionals are expressly excluded from the scope of the
statute and it clearly does not follow that a statement by a med-
ical professional, criminal or otherwise, is governed by this
statute.

**3. Libel and Slander— limited purpose public figure—sum-
mary judgment**

The trial court did not err in a defamation action by granting
defendants' motion for partial summary judgment on the issue of
whether plaintiff Gaunt was a public figure. Under North Carolina

**GAUNT v. PITTAWAY**

[139 N.C. App. 778 (2000)]

law, an individual may become a limited purpose public figure by his purposeful activity amounting to a thrusting of his personality into the vortex of an important public controversy.

Appeal by plaintiffs from orders and judgments entered 24 June 1997 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Originally heard in the Court of Appeals 30 March 1999.

*Wood & Francis, PLLC, by John S. Austin; Wyrick, Robbins, Yates & Ponton, LLP, by Gary V. Mauney; for plaintiffs-appellants.*

*Jones, Hewson & Wollard, by Lawrence J. Goldman, for defendants-appellees Jack L. Crain, Daniel B. Whitesides, Richard L. Wing, and The Nalle Clinic.*

*Koy E. Dawkins, P.A., by Koy E. Dawkins, for defendant-appellee Carolyn B. Coulam.*

*Dean & Gibson, L.L.P., by Michael G. Gibson and John W. Ong, for defendant-appellee Donald E. Pittaway.*

*F. Kevin Mauney for defendants-appellees Morgan D. Gainor and Charles J. Gainor.*

McGEE, Judge.

This case arose from a newspaper story entitled " 'Miracle Baby' Attempts Raise Questions" (the story), which was published in *The Charlotte Observer* on 15 September 1991. The story was about infertility treatment, with special emphasis on *in vitro* fertilization and the type of medical training expected of physicians performing that procedure. The story focused on plaintiffs George L. Gaunt (Gaunt) and the Center for Reproductive Medicine, P.A. (the Center). Defendants Jack L. Crain, Richard L. Wing and Daniel B. Whitesides, all of whom were shareholders and employees of defendant The Nalle Clinic, are infertility specialists and were interviewed for the newspaper story as to their opinions of Gaunt's expertise as an infertility specialist and his work at the Center. Plaintiffs allege that several of the statements made by defendants Crain, Wing, and Whitesides in the story, and the interviews leading up to its publication, were defamatory and constituted unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1.

Defendant Donald E. Pittaway, Director of Reproductive Endocrinology at Bowman Gray School of Medicine, was similarly

interviewed for the story and made several statements regarding his opinion of Gaunt's training and expertise in the field of *in vitro* fertilization. Pittaway also made statements to the effect that, in his opinion, Gaunt made a practice of ordering tests that were unnecessary or excessive. Plaintiffs filed this action alleging these statements were defamatory and constituted an unfair and deceptive practice.

Defendants moved to dismiss plaintiffs' claims for unfair and deceptive practices pursuant to N.C.R. Civ. P. 12(c), and the trial court granted the motion on 10 May 1994. Defendants then moved for partial summary judgment pursuant to N.C.R. Civ. P. 56(c) on the issue of whether plaintiffs were public figures for purposes of the newspaper story. Plaintiffs moved to strike certain exhibits defendants offered supporting their motion for partial summary judgment. Plaintiffs' motion to strike was denied and the trial court granted defendants' motion for partial summary judgment determining plaintiffs were public figures for purposes of the story in orders entered 25 July 1995. Defendants then moved for summary judgment on plaintiffs' defamation claims. These motions were subsequently granted in orders and judgments entered on 24 June 1997.

Plaintiffs timely filed a notice of appeal of the 24 June 1997 orders and judgments on plaintiffs' defamation claims. An opinion of this Court, affirming the judgment of the trial court, was filed on 2 November 1999. Plaintiffs' petition for rehearing was filed 7 December 1999. The petition was granted, in part, on 21 December 1999 for review of the applicability of Rule 46(b) of the N.C. Rules of Civil Procedure to the appeal. The petition was heard after the filing of additional briefs without oral argument. This opinion supersedes the previous opinion of our Court relating only to the issue for which the order for rehearing was granted. Our question is whether the orders entered prior to the 24 June 1997 order are reviewable. These prior orders are (1) the 10 May 1994 order of the trial court dismissing plaintiffs' action for unfair and deceptive acts or practices for failure to state a claim, and (2) the orders of the trial court entered 25 July 1995 granting defendants' motions for partial summary judgment on the public figure issue.

I.

[1] We first consider whether plaintiffs' assignments of error were preserved for appeal and are therefore reviewable by our Court. N.C.R. App. P. Rule 3(d) requires that the notice of appeal "designate

the judgment or order from which appeal is taken [.]" The substituted notice of appeal in the amended record on appeal stated:

> Plaintiffs George L. Gaunt and Center for Reproductive Medicine, P.A. hereby give notice of appeal to the North Carolina Court of Appeals from those Orders and Judgments by the Honorable Marvin K. Gray signed and filed in this action on June 24, 1997, granting all the defendants' motions for summary judgment, dismissing plaintiffs' actions with prejudice, and taxing costs against plaintiffs.

This notice of appeal does not designate appeal from the orders entered by the trial court prior to 24 June 1997, but only from the "Orders and Judgments" entered on 24 June 1997. Our Court has stated that a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake. *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156-57, 392 S.E.2d 422, 424 (1990). However, the notice of appeal in this case does not give rise to any inference of an intent to appeal orders issued other than the 24 June 1997 orders and judgments.

The question before us then is whether the orders entered prior to 24 June 1997, both the 10 May 1994 unfair and deceptive practices claim and the 25 July 1995 public figure partial summary judgment, which are not designated in the notice of appeal, are nevertheless reviewable. N.C. Gen. Stat. § 1-278 (1996) provides that: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." In *Floyd and Sons, Inc. v. Cape Fear Farm Credit*, 350 N.C. 47, 51-52, 510 S.E.2d 156, 158-59, *disc. review denied*, 350 N.C. 830, —— S.E.2d —— (1999), our Supreme Court set out the conditions under which an interlocutory order may be reviewed under N.C.G.S. § 1-278: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment.

Regarding the first requirement under *Floyd*, although plaintiffs did not timely object at the motion hearing to the trial court's granting defendants' motions to dismiss plaintiffs' claim for unfair and deceptive acts or practices, Rule 46 of the North Carolina Rules of Civil Procedure provides that "[w]ith respect to rulings and orders of

the court not directed to the admissiblity of evidence, formal objections and exceptions are unnecessary." N.C. Gen. Stat. § 1A-1, Rule 46(b) (1999). Rather, a party may preserve an objection by "mak[ing] known to the court his objection to the action of the court" or "mak[ing] known the action which he desires the court to take and his ground therefor[.]" *Id.* Plaintiffs indicated such objection in their motions opposing defendants' motions to dismiss, and our Court recently held this satisfies the first procedural requirement in *Floyd.* Our Court stated in *Inman v. Inman,* 136 N.C. App. 707, 711-12, 525 S.E.2d 820, 823, *cert. denied,* 351 N.C. 641, —— S.E.2d —— (2000), that

> Under G.S. 1A-1, Rule 46(b), with respect to rulings and orders of the trial court not directed to admissibility of evidence, no formal objections or exceptions are necessary, it being sufficient to preserve an exception that the party, at the time the ruling or order is made or sought, makes known to the court his objection to the action of the court or makes known the action which he desires the court to take and his ground therefor.

*Id.*

The second requirement of *Floyd* is that the orders being reviewed must be interlocutory and not immediately appealable. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazy v. Durham,* 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Because the trial court's orders of 10 May 1994 and 25 July 1995 did not dispose of the entire case, they are interlocutory. Generally, there is no right of immediate appeal from an interlocutory order. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990); *see also Veazey,* 231 N.C. at 362, 57 S.E.2d at 381. Although there are exceptions to this rule, none apply in the case before us, and therefore the interlocutory orders are not immediately appealable. *See* N.C. Gen. Stat. §§ 1-277(a) (1996), 7A-27(d) (1995).

As to the third requirement, plaintiffs argue the order dismissing their unfair and deceptive practices claim involved the merits and necessarily affected the judgment by "depriv[ing] plaintiffs of one of their claims," borrowing the language in *Floyd. See Floyd,* 350 N.C. at 51, 510 S.E.2d at 159. However, defendants insist that plaintiffs' unfair and deceptive practices claim "did not, in any way, involve the <u>merits</u> of the remaining defamation claims." Defendants emphasize that the

word "merits" rather than "facts" appears in N.C.G.S. § 1-278 and argue that "merits" refers to the "strict legal rights of the parties" which for unfair or deceptive practices are distinct from the legal rights involved in plaintiffs' remaining claims. Regardless, our Supreme Court in *Floyd* used a different analysis of whether an order involves the merits and necessarily affects the judgment when it stated, "[b]ecause the election of remedies order deprived plaintiffs of one of their claims, it involved the merits and affected the judgment." *Floyd*, 350 N.C. at 51, 510 S.E.2d at 159. The Court did not discuss whether the prior order must involve the same strict legal rights of the parties as those adjudged in the judgment, as defendants argue, but did state that an order depriving plaintiffs of one of their claims will qualify as involving the merits and affecting the judgment.

Therefore in this case, we agree with plaintiffs that because the order dismissing their claims for unfair and deceptive practices deprived them of one of their claims, the order involved the merits and affected the judgment. We also believe the order granting defendants' motions for partial summary judgment on the public figure issue involved the merits and necessarily affected the judgment, as defendants conceded in their motion arguing against our review of the prior orders. *Cf. Wells v. Wells*, 132 N.C. App. 401, 512 S.E.2d 468, *cert. denied*, 350 N.C. 599, —— S.E.2d —— (1999) (grant of a counterclaim for specific performance of separation agreement reviewable on appeal even though wife's notice of appeal did not reference it, as it involved the merits and necessarily affected the final judgment); *In re Allan & Warmbold Constr. Co.*, 88 N.C. App. 693, 364 S.E.2d 723, *cert. denied*, 322 N.C. 480, 370 S.E.2d 222 (1988) (order withdrawing an upset bid and directing a resale of foreclosed property reviewable even where appellants did not timely appeal from it because order involved the merits and necessarily affected the judgment). As *Floyd*'s requirements for applying N.C. Gen. Stat. § 1-278 are satisfied, we will review the orders entered prior to 24 June 1997 which are absent from the notice of appeal.

II.

[2] Plaintiffs contend the trial court erred in dismissing their claims of unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1 (1994). Subsection (a) of the statute provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). Subsection (b) defines "commerce" to include "all business activities, however denominated, but does not include

professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b). Our Court has made clear that unfair and deceptive acts committed by medical professionals are not included within the prohibition of N.C.G.S. § 75-1.1(a). *Cameron v. New Hanover Mem. Hosp.*, 58 N.C. App. 414, 446, 293 S.E.2d 901, 920, *cert. denied*, 307 N.C. 127, 297 S.E.2d 399 (1982); *see also Cohn v. Wilkes Gen. Hosp.*, 767 F. Supp. 111, 114 (W.D.N.C.), *aff'd*, 953 F.2d 154 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230, 120 L. Ed. 2d 922 (1992) ("[M]edical professionals are not contemplated by North Carolina's prohibition of unfair trade practices.").

Nonetheless, plaintiffs argue that defendants' statements are crimes and as such "cannot be a legal medical service" under the statute authorizing revocation of medical licenses. According to plaintiffs, "therefore, it follows that such actions cannot be 'exempt' from the coverage of Chapter 75." In support of their argument, plaintiffs cite a law review article entitled "The Learned Professional Exemption of the North Carolina Deceptive Trade Practices Act: The Wrong Bright Line." Plaintiffs' argument fails for the simple reason that medical professionals are expressly excluded from the scope of N.C.G.S. § 75-1.1(a) and thus it clearly does not follow that a statement by a medical professional, criminal or otherwise, is governed by this particular statute. Plaintiffs have no claim against defendants under N.C.G.S. § 75-1.1 for unfair or deceptive acts or practices. The trial court did not err in granting summary judgment in favor of the defendants on this issue.

III.

[3] Plaintiffs argue that the trial court erred by granting defendants' motions for partial summary judgment entered 25 July 1995, thereby establishing plaintiffs' status as limited purpose public figures and granting defendants' motions for summary judgment on plaintiffs' defamation claims. Our Court's standard of review on appeal from summary judgment requires a two-part analysis. Summary judgment is appropriate if (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56(c); *see also Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998). Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish

a *prima facie* case at trial. *Id.* at 394, 499 S.E.2d at 775; *see also Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686 (1964), the United States Supreme Court held the First and Fourteenth Amendments prohibit "a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice[.]' " *Id.* at 279-80, 11 L. Ed. 2d at 706. Three years later, the Court extended the application of the *New York Times* "actual malice" standard to speech about "public figures," but provided little guidance as to which plaintiffs fell into that category. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 18 L. Ed. 2d 1094 (1967). In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789 (1974), the Supreme Court elaborated on the types of defamation plaintiffs, whereby private individuals were distinguished from both public officials and public figures, the latter of whom were then divided into three categories. The *Gertz* Court described involuntary public figures, all purpose public figures, and limited purpose public figures. *Id.* at 345, 41 L. Ed. 2d at 808. Following *Gertz*, a defamation plaintiff who is a public official or public figure "may recover injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth," which is the *New York Times* "actual malice" standard. *Id.* at 342, 41 L. Ed. 2d at 807.

In the orders entered 25 July 1995, the trial court granted defendants' motions for partial summary judgment on the issue of whether plaintiffs were limited purpose public figures. The Court in *Gertz* stated that a limited purpose public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351, 41 L. Ed. 2d at 812. In the course of deciding three other cases, the Supreme Court developed a two-part inquiry for determining whether a defamation plaintiff is a limited purpose public figure: (1) was there a particular "public controversy" that gave rise to the alleged defamation and (2) was the nature and extent of the plaintiff's participation in that particular controversy sufficient to justify "public figure" status? *See Time, Inc. v. Firestone*, 424 U.S. 448, 47 L. Ed. 2d 154 (1976); *Hutchinson v. Proxmire*, 443 U.S. 111, 61 L. Ed. 2d 411 (1979); *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 61 L. Ed. 2d 450 (1979). By contrast, the United States Court of Appeals for the Fourth Circuit has set forth five requirements,

which need not be identified herein, that a defamation plaintiff must prove before a court can properly treat the plaintiff as a public figure for the limited purpose of comment on a particular public controversy. *See Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666 (4th Cir. 1982), *cert. denied*, 460 U.S. 1024, 75 L. Ed. 2d 497 (1983); *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703 (4th Cir.) (en banc), *cert. denied*, 501 U.S. 1212, 115 L. Ed. 2d 986 (1991). Under North Carolina law, an individual may become a limited purpose public figure "by his purposeful activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy[.]" *Taylor v. Greensboro News Co.*, 57 N.C. App. 426, 435-36, 291 S.E.2d 852, 857 (1982), *disc. review denied*, 307 N.C. 459, 298 S.E.2d 385 (1983) (adopting language of the United States Supreme Court in *Curtis Publishing Co.*).

We believe plaintiffs satisfied both the federal and state definitions of limited purpose public figures. First, there was an important public controversy surrounding *in vitro* fertilization at the time of *The Charlotte Observer* news article. One controversial question, for example, was whether a doctor performing *in vitro* fertilization should have special training in reproductive endocrinology. Several major news sources published articles on the debate, including *Time, Newsweek, Life, Forbes, People, Business Week, U.S. News & World Report, The Wall Street Journal* and the *Los Angeles Times*. Moreover, during this time the United States Congress and the North Carolina General Assembly debated the consumer protection issues involving *in vitro* fertilization clinics. *See Wolston*, 443 U.S. at 167, 61 L. Ed. 2d at 459 (suggesting in dicta there can be no "public controversy" unless the issues involved were truly divisive, or subject to debate—a requirement criticized by lower courts and commentators). Even Gaunt's agent, Bill Ballenger, repeatedly acknowledged there was a national controversy about infertility treatment. When questioned about the popularity of the subject, he stated "Yes, there certainly was a hot public debate, no doubt."

Furthermore, it is clear that Gaunt thrust himself into the vortex of the controversy. Gaunt, referring to the infertility treatment controversy, admitted that he had "spent every spare moment trying to stop this lunacy[.]" He also wrote to several politicians, hired a personal lobbyist, and procured the services of a public relations agent to enhance his public image. Gaunt also provided *The Charlotte Observer* with his side of the debate, for example in quotations such as: "As long as you have the background, understand how to interpret

the tests, have a medical license and are able to deal with the patient, then you have the potential of being an infertility specialist." We agree with the trial court that Gaunt is a limited purpose public figure for purposes of this action. The trial court did not err in granting defendants' motion for partial summary judgment on the public figure issue, in that there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law.

We hold that the trial court did not err in dismissing plaintiffs' claims of unfair and deceptive practices under N.C.G.S. § 75-1.1. The trial court also did not err in granting partial summary judgment finding Gaunt to be a public figure for purposes of defamation in this case. Plaintiffs' arguments concerning the trial court's granting summary judgment to defendants on plaintiffs' defamation claims were determined in the prior opinion of this Court.

Affirmed.

Judges GREENE and MARTIN concur.