MICHELE BATTLE PHILLIPS, PLAINTIFF v. A TRIANGLE WOMEN'S HEALTH CLINIC, INC. AND STUART L. SCHNIDER, M.D., DEFENDANTS

MICHELE BATTLE PHILLIPS, PLAINTIFF v. STUART L. SCHNIDER, M.D., DEFENDANT

No. COA01-1418

(Filed 31 December 2002)

### 1. Medical Malpractice—certification—telephone call—doctor's uncertain memory

The trial court erred by dismissing plaintiff's medical malpractice claim for not complying with the "willingness to testify" requirement of N.C.G.S. § 1A-1, Rule 9(j)(1) where the doctor first testified in probabilities because he could not remember the substance of a two year old telephone conversation and then, having reflected on the conversation, recalled having stated his willingness to testify prior to the lawsuit being filed. There was no clear contradiction by the doctor, who was not a party, in his deposition and his later affidavit.

─────────────────

**2. Unfair Trade Practices—doctor's qualifications—learned professions exception**

The trial court did not err by granting summary judgment for defendant on an unfair and deceptive practices claim filed with a medical malpractice action. Although plaintiff contends that the learned professions exception of N.C.G.S. § 75-1.1 does not exclude defendant's alleged misrepresentations that he was a board certified OB-GYN because those activities involve commercial activity, the evidence does not indicate the manner in which the communication was made. Moreover, defendant's professional services were the essence of his relationship with plaintiff and plaintiff consulted with defendant in his professional capacity to obtain those services.

Judge GREENE concurring in part and dissenting in part.

Appeal by plaintiff from orders entered 26 October 2000 and 6 August 2001 by Judge Abraham Penn Jones, and from orders entered 16 March 2001 and 6 August 2001 by Judge Donald W. Stephens in the Wake County Superior Court. Heard in the Court of Appeals 20 August 2002.

*Burford & Lewis, P.L.L.C., by Robert J. Burford, for plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by John W. Minier and Richard V. Stevens, for defendant-appellee.*

HUNTER, Judge.

Michele Battle Phillips ("plaintiff") appeals the dismissal of her medical malpractice claim and the granting of summary judgment on her unfair and deceptive business practices claim against Stuart L. Schnider, M.D. ("defendant"). We reverse in part and affirm in part.

On or about 29 April 1994, plaintiff underwent an abortion at A Triangle Women's Health Clinic, Inc. ("the Clinic"). Plaintiff selected defendant to perform the procedure based on his representations that he was a board certified specialist in obstetrics and gynecology ("OB-GYN"). During the abortion procedure, plaintiff incurred severe damage to her uterus and bowel that caused excessive hemorrhaging. Plaintiff was immediately transferred to the University of North Carolina Hospital in Chapel Hill where she underwent emergency abdominal surgery. Ultimately, plaintiff had to have

a total hysterectomy on 3 March 1995 as a result of the complications arising from the abortion.

On 25 June 1997, plaintiff filed a complaint against defendant in Wake County Superior Court alleging, in part, that defendant was liable for medical malpractice, as well as unfair and deceptive business practices pursuant to Section 75-1.1 of the North Carolina General Statutes.[1] In connection with her medical malpractice claim, plaintiff's complaint included the required certification as per Rule 9(j) of the North Carolina Rules of Civil Procedure. Plaintiff also filed a designation of expert witnesses on 31 July 1998, which designated Michael C. Goodman, M.D. ("Dr. Goodman") as one such expert.

Dr. Goodman's deposition was taken on 18 March 1999. During his deposition, Dr. Goodman testified that he had received a telephone call from plaintiff's counsel, Robert J. Burford ("Burford"), in May of 1997 regarding plaintiff's case, but Dr. Goodman could not remember the substance of that conversation. When asked whether he would have expressed an opinion regarding plaintiff's case over the phone or waited until he had first reviewed plaintiff's records, Dr. Goodman testified: "Well, I probably would have given [Burford] an idea of whether I thought I should see the case or not. That's about as far as I could go over the telephone." Dr. Goodman further testified that he reviewed plaintiff's records sometime after his conversation with Burford and sent Burford a letter dated 11 November 1997 containing his initial opinions regarding the care plaintiff had received from defendant.

On 8 November 1999, defendant filed a motion to dismiss and/or summary judgment on plaintiff's medical malpractice claim. This motion was based primarily on defendant's belief that Dr. Goodman's deposition failed to establish his "willingness to testify" as a medical expert on plaintiff's behalf prior to the filing date of her lawsuit as required by Rule 9(j). However, before the trial court ruled on this motion, the affidavit of Dr. Goodman was filed on 1 December 1999. Relevant portions of the affidavit were as follows:

> 4. From Mr. Burford's prior experience with me, he is aware that I am willing to serve as an expert witness at trial on any case that I review, and at [plaintiff's] trial I would be willing to testify regarding my opinion of the appropriateness of the medical care rendered . . . .

1. Plaintiff's complaint also named the Clinic as a defendant and alleged various claims against it; however, none of those claims are at issue in this appeal.

5. My recollection is that in his discussion with me in May 1997, Mr. Burford read information to me verbatim from the patient's medical records, as well as gave me a factual outline of the medical care rendered according to [plaintiff's] medical records . . . .

. . . .

8. Based upon the information outlined to me . . . I gave Mr. Burford my opinion that the double perforation of [plaintiff's] uterus, the perforation of her broad ligament, the bruising of her cecum, the leaving of products of conception in her uterus, and [defendant's] failure to know or to detect that any of this damage had occurred was, in my professional opinion, to a reasonable degree of medical certainty, clearly outside the applicable standard of care.

Nevertheless, on 26 October 2000, an order was entered dismissing plaintiff's action to the extent that it did not comply with Rule 9(j)'s "willingness to testify" requirement. The court denied defendant's motion for summary judgment on plaintiff's unfair and deceptive business practices claims. Although the court later granted plaintiff's motion for reconsideration, a new order was entered on 6 August 2001 that re-affirmed the dismissal.

Subsequent to the court's dismissal of plaintiff's claim on Rule 9(j) grounds, defendant moved for modification of the court's previous summary judgment ruling so as to grant defendant summary judgment on plaintiff's unfair and deceptive business practices claim. The modified order was granted on 19 March 2001 and stated that "G.S. §75-1.1, et. seq. does not apply to professional services rendered by a member of a learned profession." Plaintiff once again moved for reconsideration on 29 March 2001. The court denied plaintiff's motion in an order filed on 6 August 2001, which stated that there was "**no just reason for delay**" an entry of final judgment of dismissal on plaintiff's unfair and deceptive business practices claim. Plaintiff appeals the court's orders with respect to (1) her alleged noncompliance with Rule 9(j) and (2) her unfair and deceptive business practices claim.

I.

**[1]** The first issue presented to this Court is whether the trial court erred in dismissing plaintiff's medical malpractice claim based on her

alleged non-compliance with Rule 9(j)'s "willingness to testify" requirement. We conclude the court did err.

Rule 9(j) states, in pertinent part, that a complaint alleging medical malpractice shall be dismissed unless the

> pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and *who is willing to testify that the medical care did not comply with the applicable standard of care*[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2001) (emphasis added). Our appellate courts have not clearly set forth the standard by which to review a trial court's motion to dismiss pursuant to Rule 9(j). Nevertheless, when ruling on such a motion, a court must consider the facts relevant to Rule 9(j) and apply the law to them. Thus, a plaintiff's compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court, not a jury. *See* N.C. Gen. Stat. § 1A-1, Rule (9)(j). A question of law is reviewable by this Court *de novo. See Trapp v. Maccioli*, 129 N.C. App. 237, 241 & n. 2, 497 S.E.2d 708, 711 & n. 2 (1998).

Here, plaintiff's claim was dismissed based on Dr. Goodman's testimony in his 18 March 1999 deposition that: "Well, I probably would have given [plaintiff's attorney] an idea of whether I thought I should see the case or not. That's about as far as I could go over the telephone." However, plaintiff later filed the affidavit of Dr. Goodman on 1 December 1999 (filed after defendant sought a motion to dismiss on 8 November 1999), which stated the doctor gave his opinion to Burford during a telephone conversation before seeing plaintiff's records and prior to the filing of her lawsuit. Although the trial court set forth no specific reason for concluding plaintiff had not complied with Rule 9(j) requirements, the only logical explanation for its conclusion was that the court determined the doctor's affidavit was not credible.[2]

With respect to testimony contained in depositions and affidavits, this Court held in *Mortgage Co. v. Real Estate, Inc.*, 39 N.C. App. 1, 9, 249 S.E.2d 727, 732 (1978) that "contradictory testimony contained in

---

2. Although not raised as an issue by either party, we note this Court holds that Rule 9(j)'s "willingness to testify" requirement is met when a medical expert opines during a telephone conversation that the applicable standard of care was breached. *See Hylton v. Koontz*, 138 N.C. App. 511, 530 S.E.2d 108, *disc. review denied*, 353 N.C. 264, 546 S.E.2d 98 (2000), *rehearing dismissed*, 353 N.C. 373, 547 S.E.2d 10 (2001).

an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion [because] the only issue of fact raised by the affidavit is the credibility of the affiant." The holding in *Mortgage* addressed clear contradictions made by a party. Defendant essentially contends this holding is applicable to the present case because it supports the court's grant of summary judgment on plaintiff's medical malpractice claim. We disagree.

There are two important distinctions between the case *sub judice* and *Mortgage*. The first, and most obvious, is that Dr. Goodman is not a party to this action; he is an expert witness testifying on behalf of a party. Secondly, in his deposition, Dr. Goodman never affirmatively denied giving his opinion to plaintiff's attorney over the telephone. On the contrary, the doctor testified in terms of probabilities because he could not immediately remember the substance of his telephone conversation with Burford that had occurred approximately two years earlier. After having time to reflect on that conversation, Dr. Goodman's affidavit was filed in which he recalled stating his willingness to testify on plaintiff's behalf prior to her lawsuit being initiated. Thus, there was no clear contradiction by Dr. Goodman, a non-party, in his deposition and later filed affidavit.

Accordingly, having met all the requirements of Rule 9(j), the court erred in dismissing plaintiff's medical malpractice claim on Rule 9(j) grounds.[3]

II.

[2] The second issue presented to this Court is whether the trial court erred in granting summary judgment on plaintiff's unfair and deceptive business practices claim under Section 75-1.1. We conclude that the court did not err.

Section 75-1.1 was enacted for the purpose of providing "a civil means to maintain ethical standards of dealings between persons

---

3. Alternatively, plaintiff argues compliance with Rule 9(j) is irrelevant to her medical malpractice claim because this Court held in *Anderson v. Assimos,* 146 N.C. App. 339, 553 S.E.2d 63 (2001), *appeal granted,* 355 N.C. 348, 561 S.E.2d 498 (2002), that Rule 9(j) was unconstitutional. However, our Supreme Court recently vacated that part of the *Anderson* holding, concluding that this Court erred in addressing the constitutionality of Rule 9(j) because that issue was not raised at the trial level and thus was not properly before us. *Anderson v. Assimos,* 356 N.C. 415, 572 S.E.2d 101 (2002). Likewise, Rule 9(j)'s constitutionally was not raised by plaintiff at the trial level in the present case. Plaintiff raised this particular issue for the first time on appeal. Since this issue is once again not properly before this Court and in light of the Supreme Court's recent decision, we are compelled to address plaintiff's medical malpractice claim under the auspices that Rule 9(j) remains constitutional.

engaged in business and the consuming public within this State and applies to dealings between buyers and sellers at all levels of commerce." *United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 320, 339 S.E.2d 90, 93 (1986). In order to establish a claim under this statute, "plaintiffs must show (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to them." *Burgess v. Busby*, 142 N.C. App. 393, 406, 544 S.E.2d 4, 11, *reh'g denied*, 355 N.C. 224, 559 S.E.2d 554 (2001). In its broadest sense, "commerce" comprehends intercourse for the purposes of trade in any form. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (1999). Our statutes define "commerce" as "all business activities, however denominated, but does not include *professional services rendered by a member of a learned profession.*" N.C. Gen. Stat. § 75-1.1(b) (2001) (emphasis added). Thus, despite Section 75-1.1 being subject to a reasonably broad interpretation, the General Assembly expressly excludes the rendition of professional services by a member of a learned profession from the definition of "commerce." *Sharp v. Gailor*, 132 N.C. App. 213, 217, 510 S.E.2d 702, 704 (1999). *See also Sara Lee Corp.*, 351 N.C. at 32, 519 S.E.2d at 311.

By enacting Section 75-1.1, the General Assembly's primary concern was "with openness and fairness in those activities which characterize a party as a 'seller.' " *Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 317, 233 S.E.2d 895, 899 (1977). When distinguishing a medical professional, such as a physician, from a seller, we have recognized as follows:

> [T]he essence of the transaction between the retail seller and the consumer relates to the article sold, and that the seller is in the business of supplying the product to the consumer. It is the product and that alone for which he is paid. The physician offers his professional services and skill. It is his professional services and his skill for which he is paid, and they are the essence of the relationship between him and his patient.

*Batiste v. Home Products Corp.*, 32 N.C. App. 1, 6, 231 S.E.2d 269, 279 (1977). Therefore, this Court has ultimately held that "medical professionals are expressly excluded from the scope of N.C.G.S. § 75-1.1(a) and thus it clearly does not follow that a statement by a medical professional, criminal or otherwise, is governed by this particular statute." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001).

In the case *sub judice*, plaintiff contends that the "learned profession" exception of Section 75-1.1 does not exclude defendant's alleged misrepresentations that he was a board certified OB-GYN because those misrepresentations involve "commercial" activity, not the rendering of "professional services." However, the evidence does not indicate the manner in which defendant's certification (or lack thereof) was communicated to plaintiff in order to reach that conclusion. In the absence of such evidence, we are unable to discern whether the alleged misrepresentations were made during a consultation with plaintiff or "in the nature of an advertisement" as determined by the dissent.

Nevertheless, the evidence clearly indicates, and the parties do not dispute, that defendant is a member of a learned profession who provided professional (although allegedly negligent) medical services to plaintiff. Defendant's professional services and skills were the essence of his relationship with plaintiff, and plaintiff consulted with defendant in his professional capacity for the purposes of obtaining those services. *See Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 293 S.E.2d 901 (1982). Furthermore, this Court recently held that the actions of a medical professional fall within the "learned profession" exception of Section 75-1.1(b) even after that professional provided a letter to other medical professionals in his county with the alleged intention of discouraging them from providing health care to an individual. *See Burgess*, 142 N.C. App. at 407, 544 S.E.2d at 11-12. As the statements made in that letter were not governed by Section 75-1.1(a) due to the "learned profession" exception, so too are the alleged misrepresentations made by defendant. *See Gaunt*, 139 N.C. App. 778, 534 S.E.2d 660. Thus, previously established precedent compels us to conclude that the trial court did not err in granting summary judgment on plaintiff's claim for unfair and deceptive trade practices.

In conclusion, we reverse the dismissal of plaintiff's medical malpractice claim; however, we affirm the court's grant of summary judgment on plaintiff's unfair and deceptive trade practices claim.

Reversed in part and affirmed in part.

Judge TIMMONS-GOODSON concurs.

Judge GREENE concurs in part and dissents in part in a separate opinion.

PHILLIPS v. TRIANGLE WOMEN'S HEALTH CLINIC, INC.

[155 N.C. App. 372 (2002)]

GREENE, Judge, concurring in part and dissenting in part.

While I concur in part I of the majority opinion, I disagree with the majority's construction of N.C. Gen. Stat. § 75-1.1(b), which would exclude from the definition of commerce *any* act committed by a member of a learned profession.

This Court has previously stated that:

> In order for the learned profession exemption to apply, a two-part test must be satisfied. First, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services.

*Reid v. Ayers*, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000) (citation omitted). By focusing solely on the first factor, the majority mistakenly relies on two recent opinions of this Court. *See Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4 (2001); *Gaunt v. Pittaway*, 139 N.C. App. 778, 534 S.E.2d 660 (2000). Neither *Burgess* nor *Gaunt* stand for the proposition that a defendant's status as a member of a learned profession alone will suffice to bar an action for unfair and deceptive practices.

In *Gaunt*, the plaintiffs did not argue the defendants' actions did not constitute professional services rendered. *Gaunt*, 139 N.C. App. at 784, 534 S.E.2d at 664. Instead, the plaintiffs asserted that because the defendants' actions were criminal, they could not be considered *legal* medical services. Responding to the question presented, this Court then addressed only the first prong of the test outlined in *Reid*.

While in *Burgess* this Court placed great emphasis on the defendant's status as a member of the medical profession, it ultimately concluded the plaintiffs' claim for unfair and deceptive practices was barred because "this [was] a matter *affecting the professional services rendered* by members of a learned profession and therefore [fell] within the exception in N.C.G.S. § 75-1.1(b)." *Burgess*, 142 N.C. App. at 407, 544 S.E.2d at 11-12 (emphasis added).

The dispositive issue in this case is whether an alleged misrepresentation regarding a professional's certification as an OB-GYN is exempted under section 75-1.1(b) as a "professional service[] rendered."

The rendering of a professional service is limited to the performance of work "[c]onforming to the standards of a profession" and "commanded or paid for by another." *American Heritage College Dictionary* 1092 (3d ed. 1993) (defining "professional"); *Webster's Third New International Dictionary* 2075 (1968) (defining "service"). In *Reid*, this Court held that "[a]dvertising is not an essential component to the rendering of legal services and thus would fall outside the exemption." *Reid*, 138 N.C. App. at 267, 531 S.E.2d at 236. The learned profession exception also does not apply "when the [professional] is engaged in the entrepreneurial aspects of [his] practice that are geared more towards [his] own interests, as opposed to the interests of [his] clients." *Id.*

In this case, Dr. Stuart L. Schnider (defendant) allegedly misrepresented his certification as an OB-GYN. This statement was outside the scope of any work commanded or paid for by plaintiff. Instead it was in the nature of an advertisement of defendant's certification and thus does not constitute a "professional service[] rendered." Accordingly, the learned profession exception is inapplicable, and the trial court erred in dismissing plaintiff's claim for unfair and deceptive practices. This matter should therefore be reversed and remanded.