DENIECE SHELTON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS SIMILARLY SITUATED v. DUKE UNIVERSITY HEALTH SYSTEM, INC. D/B/A RALEIGH COMMUNITY HOSPITAL, D/B/A DUKE HEALTH RALEIGH HOSPITAL, D/B/A DUKE UNIVERSITY HOSPITAL, D/B/A DUKE UNIVERSITY MEDICAL CENTER AND D/B/A DURHAM REGIONAL HOSPITAL

No. COA05-1113

(Filed 1 August 2006)

**1. Contracts; Hospitals and Other Medical Facilities— medical expenses—agreement to pay "regular rates"—no breach of contract by hospital**

Plaintiff patient who did not have health insurance sufficient to cover all of her medical expenses did not state a claim for breach by defendant hospital of a contract in which she agreed to pay "the regular rates and terms of the hospital at the time of the patient's discharge" where plaintiff alleged that defendant hospital was charging reduced rates to patients who had full insurance coverage and that the rates defendant charged plaintiff were not stated in the contract and were unreasonable because (1) plaintiff did not allege that she was not charged the "regular rates" of defendant hospital; (2) plaintiff alleges that the "regular rates" were shown on defendant's "charge master," and plaintiff made no allegation that she attempted to gain access to the

**SHELTON v. DUKE UNIV. HEALTH SYS.**

[179 N.C. App. 120 (2006)]

"charge master" to ascertain the regular rates and was denied access to this document by defendant; (3) the rates of services contained in the "charge master" were necessarily implied in the contract signed by plaintiff; and (4) the price term of the hospital's "regular rates" was thus definite and certain or capable of being made so.

## 2. Declaratory Judgments— price term—ambiguity

The trial court did not err by dismissing plaintiff's claim for declaratory judgment to determine the actual price she should pay for hospital service in light of the alleged ambiguity of the price term in the contract, because: (1) the Court of Appeals has already held that the price term was not ambiguous; and (2) plaintiff paid the charges without objection when they were due.

## 3. Unfair Trade Practices— dismissal of claim—medical professionals not included

The trial court did not err by dismissing plaintiff's claim for unfair and deceptive trade practices, because: (1) unfair and deceptive acts committed by medical professionals are not included within the prohibition of N.C.G.S. § 75-1.1(a); and (2) the facts of this case do not justify a departure from this precedent.

Appeal by plaintiff from judgment entered 11 July 2005 by Judge Ronald L. Stephens in Wake County Superior Court. Heard in the Court of Appeals 22 March 2006.

*Wallace & Graham, P.A., by Mona Lisa Wallace, John S. Hughes, and Cathy A. Williams, and Shipman & Wright, L.L.P., by Gary K. Shipman and William G. Wright, for plaintiff-appellant.*

*Fulbright & Jaworski L.L.P., by John M. Simpson, Frederick Robinson, and Stephen M. McNabb, for defendant-appellee.*

STEELMAN, Judge.

Plaintiff sought treatment at Raleigh Community Hospital,[1] which is owned by Duke University Health System, in July of 2002. Plaintiff did not have health insurance sufficient to cover all her medical expenses. Prior to obtaining treatment, plaintiff signed a consent form entitled "Consent and Conditions of Treatment." Under a section titled "Payment Agreement," the consent form included the fol-

---

1. Raleigh Community Hospital changed its name to Duke Health Raleigh Hospital effective June 1, 2004.

lowing language: "The undersigned individually obligates himself to the payment of the Hospital account incurred by the patient in accordance with the regular rates and terms of the Hospital at the time of patient's discharge." Plaintiff alleges that she was never provided with any information explaining or listing the "regular rates" of the hospital. Plaintiff further alleges that, unbeknownst to her at the time she signed the contract, defendant was charging greatly reduced rates to patients who had full insurance coverage through either government or private insurance programs.

Subsequent to her discharge from the hospital, plaintiff received medical bills totaling $7891.00 for services rendered by defendant. Plaintiff paid these bills in full prior to filing suit in this matter.

Plaintiff filed this action on 14 February 2005, on behalf of herself and a class of persons similarly situated. Plaintiff's complaint included causes of action for breach of contract; unjust enrichment; unfair and deceptive trade practices; and declaratory and injunctive relief. Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on 15 April 2005. The trial court granted defendant's motion, and dismissed plaintiff's complaint with prejudice by order entered 11 July 2005. Plaintiff appeals.

[1] In plaintiff's first argument, she contends that the trial court erred in dismissing her claims for breach of contract; unjust enrichment; and declaratory and injunctive relief. We disagree.

> We review *de novo* the grant of a motion to dismiss. A motion to dismiss made pursuant to . . . Rule 12(b)(6) tests the legal sufficiency of the complaint. "The system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." Accordingly, when entertaining "a motion to dismiss, the trial court must take the complaint's allegations as true and determine whether they are sufficient to state a claim upon which relief may be granted under some legal theory."

*Lea v. Grier*, 156 N.C. App. 503, 507, 577 S.E.2d 411, 414-15 (2003) (citations omitted).

Plaintiff argues the following in support of her contract claim: 1) The Consent and Conditions of Treatment form which she signed failed to contain a definite price term; 2) because no definite price term was agreed upon, the law infers a "reasonable rate" as the con-

tract price for the services rendered; and 3) the rates defendant charged plaintiff for its services were unreasonable, and the charging of unreasonable rates constituted a breach of the contract. Plaintiff's contract claim fails if the relevant language of the consent form was sufficiently definite to inform plaintiff of the price term. Contract interpretation is a matter of law, and the standard of review for this Court is *de novo*. *Internet East, Inc. v. Duro Communs., Inc.*, 146 N.C. App. 401, 405, 553 S.E.2d 84, 87 (2001).

The relevant language from the Consent and Conditions of Treatment form reads as follows: "The undersigned individually obligates himself to the payment of the Hospital account incurred by the patient in accordance with the regular rates and terms of the Hospital at the time of patient's discharge." We first note that nowhere in plaintiff's complaint does she contend that the rates she was charged were not the "regular rates" of the hospital, she merely contends that these rates were "unreasonable". Therefore, the question of whether plaintiff was charged the "regular rates" is not before us on appeal.

The next question is whether the "regular rates" language in the agreement was sufficiently definite to allow a meeting of the minds on the price term. *Elliott v. Duke University, Inc.*, 66 N.C. App. 590, 596, 311 S.E.2d 632, 636 (1984) ("[T]he terms of a contract must be definite and certain or capable of being made so; the minds of the parties must meet upon a definite proposition."). Plaintiff contends that the hospital keeps a list of the rates it charges the uninsured (or under-insured) in a document called the "charge master". Plaintiff further alleges that she was not provided with this document before she signed the consent form. Plaintiff makes no allegation that she attempted to gain access to the "charge master" to ascertain the regular rates and was denied access to this "charge master" by defendant.

> "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning.

> A contract, however, encompasses not only its express provisions but also all such implied provisions as are necessary to

effect the intention of the parties unless express terms prevent such inclusion. "The court will be prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have intended the stipulation in question." The doctrine of implication of unexpressed terms has been succinctly stated as follows:

"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made."

*Lane v. Scarborough*, 284 N.C. 407, 409-11, 200 S.E.2d 622, 624-25 (1973).

In the instant case, the contested language is free from ambiguity. It is clear that plaintiff was agreeing by her signature to pay the "regular" rates charged by defendant for the services it was to render. Plaintiff makes no argument in her complaint that she was charged anything other than the "regular" rates. When we consider the "situation of the parties at the time," the "subject matter" and the "purpose sought," we find the price term was sufficiently definite.

Plaintiff sought medical services. Inherent in providing medical care and treatment is the element of the unforeseen. It is common, almost expected, that a course of treatment embarked upon will, through unforeseen circumstances, be amended, altered, enhanced, or terminated altogether, and a completely new course of treatment begun. In light of this, it would be impossible for a hospital to fully and accurately estimate all of the treatments and costs for every patient before treatment has begun. It would be cumbersome, and against patients' interests, to require hospitals to seek new authorization from a patient whenever some medical circumstance requires a new course of treatment. For this reason, it is entirely rea-

sonable and predictable that patients would agree to pay the hospital's regular rates for whatever services might be necessary in treating their particular ailments or afflictions. None of this is to suggest that patients have no right to question hospitals concerning any particular treatment and the costs therefore, or that patients cannot refuse treatment for reasons of cost.

As previously stated, there is no evidence in the record that plaintiff attempted to ascertain the regular rates for the services to be provided to her. Plaintiff's complaint does allege that the "regular" rates existed on defendant's "charge master". Thus, the price term of "the regular rates and terms of the Hospital at the time of patient's discharge" was "definite and certain *or capable of being made so.*" *Elliott*, 66 N.C. App. at 596, 311 S.E.2d at 636 (emphasis added). We hold that the rates of services contained in the "charge master" were necessarily implied in the contract signed by plaintiff. Because there is no allegation that the rates contained in the "charge master" were not sufficiently definite, and because there is no allegation that plaintiff was charged rates different than those "regular" rates contained in the "charge master", plaintiff's complaint does not allege a claim for breach of contract. The trial court properly dismissed this claim.

Plaintiff argues in the alternative that if this Court finds the above contested language renders the contract unenforceable, she was entitled to recover under a theory of unjust enrichment, and the trial court erred in dismissing that claim. Because we have not held the contract to be unenforceable, we do not address this argument. Further, having held that plaintiff agreed to pay the "regular rates"; that the "regular rates" price term was sufficiently definite; and that plaintiff was, in fact, charged the "regular rates"; we need not address plaintiff's argument that the rates charged by defendant were "unreasonable."

[2] Next plaintiff argues that the trial court erred in dismissing her claims for declaratory judgment and injunctive relief. Plaintiff makes no argument in her brief concerning her claim for injunctive relief, and it is deemed abandoned. N.C. R. App. P. Rule 28(b)(6) (2005). Plaintiff argues that she is entitled to a declaratory judgment to determine the actual price she should pay in light of the ambiguity of the price term in the contract. As we have already held that the price term is not ambiguous, plaintiff's argument fails. We again note that plaintiff paid the charges without objection when they were due. Plaintiff's first argument is without merit.

**[3]** In plaintiff's second argument, she contends that the trial court erred in dismissing her claim for unfair and deceptive trade practices against defendant. We disagree.

> In order to establish a claim [under N.C. Gen. Stat. § 75-1.1], plaintiffs must show (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to them. N.C. Gen. Stat. § 75-1.1(b) (1999) defines commerce as "all business activities however denominated, but does not include professional services rendered by a member of a learned profession."

*Burgess v. Busby*, 142 N.C. App. 393, 406, 544 S.E.2d 4, 11 (2001). "Our Court has made clear that unfair and deceptive acts committed by medical professionals are not included within the prohibition of N.C.G.S. § 75-1.1(a)." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000). This exception for medical professionals has been broadly interpreted by this Court, *see Phillips v. A Triangle Women's Health Clinic*, 155 N.C. App. 372, 377-79, 573 S.E.2d 600, 604-05 (2002); *Burgess*, 142 N.C. App. 393, 544 S.E.2d 4 (2001); *Gaunt*, 139 N.C. App. 778, 534 S.E.2d 660 (2000); *Abram v. Charter Medical Corp.*, 100 N.C. App. 718, 722-23, 398 S.E.2d 331, 334 (1990); *Cameron v. New Hanover Memorial Hospital, Inc.*, 58 N.C. App. 414, 447, 293 S.E.2d 901, 921 (1982), and includes hospitals under the definition of "medical professionals." *Id.* We hold that the facts of this case do not justify a departure from this precedent. This argument is without merit.

In light of our holdings above, we do not reach plaintiff's third argument.

AFFIRMED.

Judges ELMORE and JACKSON concur.