**MORRIS v. SOUTHEASTERN ORTHOPEDICS SPORTS MED. & SHOULDER CTR.**

[199 N.C. App. 425 (2009)]

RUTH ANN MORRIS, Plaintiff v. SOUTHEASTERN ORTHOPEDICS SPORTS MEDI-
CINE AND SHOULDER CENTER, P.A., KEVIN P. SPEER, EXECUTIVE SURGICAL
CENTER, INC., STOCKS SURGICAL CENTER, P.L.L.C., AND LEWIS HENRY
STOCKS, III, Defendants

No. COA08-1372

(Filed 1 September 2009)

**1. Appeal and Error— record—documents excluded by trial
court**

Documents concerning plaintiff's treating physician should
not have been excluded from the record on appeal in a medical
malpractice action in which plaintiff's expert witness designa-
tion (PEWD) was in dispute. Under Appellate Rule 11(c), the
trial court is not to decide whether material desired in the
record by either party is relevant; moreover, the doctor's depo-
sition and affidavit go to the heart of the issues on appeal and
are clearly relevant.

**2. Appeal and Error— record—petition for certiorari—ex-
pert witness designation—included**

A petition for *certiorari* was granted to include plaintiff's
expert witness designation in the record on appeal where defend-
ant had asked to exclude it on the grounds that it was not con-
sidered by the trial court. Not being considered is not the same as
not being submitted, which defendants do not dispute.

**3. Appeal and Error— record—petition for certiorari—depo-
sition—submitted to trial court**

In a dispute over the settlement of an appellate record, *cer-
tiorari* was granted to include a deposition that defendant con-
tended was not submitted to the trial court. The deposition was
submitted because plaintiff filed a Notice of Filing and handed a
copy to the court at the hearing. There was no prejudice because
defense counsel attended the deposition and vigorously exam-
ined the doctor.

**4. Appeal and Error— record—affidavit—filed on day of hear-
ing and before entry of judgment—timely**

An affidavit from a treating physician in a medical malprac-
tice case should have been included in the record on appeal
where defendants argued that the affidavit was not timely filed
but the record did not support that contention. The affidavit was

MORRIS v. SOUTHEASTERN ORTHOPEDICS SPORTS MED. & SHOULDER CTR.

[199 N.C. App. 425 (2009)]

clearly filed on the day of the hearing and well before entry of judgment, and defendants have not argued that the affidavit was not timely served on them.

### 5. Medical Malpractice— identification of expert—compliance with discovery order—timeliness

Dismissal of plaintiff's medical malpractice complaint was not an appropriate discovery sanction to the degree that the dismissal was based upon any failure of plaintiff to identify an expert witness in accordance with the Consent Discovery Scheduling Order (CDSO).

### 6. Medical Malpractice— identification of expert—retained for other purposes

A Rule 9(j) dismissal was improper where it was based on the treating physician's deposition testimony that the treatment given was below the standard of care and that he was willing to testify to that opinion before the suit was filed. Rule 9(j) does not require that the person who gives an opinion as to the standard of care prior to filing the complaint be an expert witness whom plaintiff has specifically retained for this purpose only.

Appeal by plaintiff from order entered 24 January 2007 by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County. Heard in the Court of Appeals 6 May 2009.

*The Law Offices of Robert O. Jenkins, by Robert O. Jenkins, for plaintiff-appellant.*

*Crawford & Crawford, LLP, by Renee B. Crawford, Robert O. Crawford, III, and Heather J. Williams, for defendant-appellees.*

STROUD, Judge.

Plaintiff appeals from the order dismissing her medical negligence complaint with prejudice pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. We reverse and remand.

## I. Background

On 23 September 2002, plaintiff fractured her right clavicle while rollerblading. Plaintiff sought treatment from defendant Kevin P. Speer, M.D. ("Dr. Speer"), an employee of defendant Southeastern

Orthopedics Sports Medicine and Shoulder Center, P.A. ("South eastern") in Wake County. Dr. Speer inserted and later removed a pin from plaintiff's right clavicle, but the fracture did not heal. On 3 February 2003, Dr. Speer completely removed plaintiff's right clavicle.

Plaintiff later sought treatment from Carl J. Basamania, M.D. ("Dr. Basamania") for related shoulder problems. Dr. Basamania performed three surgeries on plaintiff's shoulder, the last on 17 June 2005.

On 12 January 2005, plaintiff filed a complaint in Superior Court, *Durham* County against Southeastern and Dr. Speer.[1] The complaint alleged medical negligence in the removal of plaintiff's clavicle. The complaint specifically asserted compliance with Rule 9(j) of the North Carolina Rules of Civil Procedure.

Defendants answered on 16 March 2005, denying that plaintiff's injuries had been caused by any negligence on their part. The answer also asserted the affirmative defense of contributory negligence on the grounds that plaintiff had failed to return for post-operative followup care. Defendants served plaintiff with Rule 9(j) interrogatories.

On 26 April 2005, plaintiff served her answers to defendant's Rule 9(j) interrogatories. Plaintiff averred that she had contacted Dr. Donald Ferlic on or about 20 October 2004 and that on or about 15 November 2004 Dr. Ferlic stated that he was willing to testify that defendants breached the applicable standard of care.

Plaintiff's Expert Witness Designation (or "PEWD") was served on defendants' counsel by first-class mail on 1 June 2006. The PEWD was filed, according to the file stamp on the face of the document, on 2 June 2006 with the *Wake* County Clerk of Superior Court. The PEWD named Dr. Basamania as an "expert witness who may be called to testify at the trial of this action[.]" The PEWD noted, however, that "Dr. Basamania is not a retained expert witness, but instead will offer his testimony as Ms. Morris' subsequent treating physician."

---

1. On 4 January 2006, plaintiff amended the complaint to add Lewis Henry Stocks III, M.D. and Stocks Surgical Center, P.L.L.C. (successor to Executive Surgical Center, Inc.) as defendants. However, on 2 May 2008 plaintiff voluntarily dismissed those two defendants with prejudice. Dr. Stocks and Stocks Surgical Center, P.L.L.C. are not parties to this appeal.

A Consent Discovery Scheduling Order (or "CDSO") was signed by Judge Kenneth C. Titus on 29 August 2006[2] and filed on or about 1 September 2006. The CDSO required, in pertinent part:

2. By **June 1, 2006**, the plaintiff shall identify any and all expert witnesses whom she may call to testify at trial.

. . . .

4. Plaintiff will make all expert witnesses available for deposition by **August 1, 2006**.

(Emphasis in Original.)

On or about 27 November 2006, defendants moved to dismiss the complaint for failure to comply with Rule 9(j) certification requirements. The specific basis for defendants' motion was that Dr. Ferlic's deposition testimony indicated he did not review the standard of care until after plaintiff's complaint had already been filed.

On 5 December 2006, Dr. Basamania was deposed and examined by both parties. Dr. Basamania testified that plaintiff's care fell below the applicable standard. Dr. Basamania stated, that in October 2004, he had communicated to plaintiff's attorney that he considered removal of plaintiff's clavicle to be below the applicable standard of care and that he was willing to testify to that fact.

Also on 5 December 2006, plaintiff served supplemental answers to defendants' Rule 9(j) interrogatories. The supplemental answers were filed with the trial court on 9 January 2007. The supplemental answers averred that plaintiff had contacted Dr. Basamania on or about 5 October 2004 and that Dr. Basamania stated at that time his willingness to testify that defendants breached the applicable standard of care in treating plaintiff.

The trial court heard the motion to dismiss on or about 9 January 2007. On 24 January 2007, the trial court dismissed with prejudice plaintiff's complaint against Southeastern and Dr. Speer on the basis of Rule 9(j) non-compliance. Plaintiff appeals from the 24 January 2007 order of dismissal.

## II. Record on Appeal

The parties were unable to settle the record by agreement. On 2 October 2008, plaintiff moved the trial court to judicially settle the

---

2. The CDSO purported to be signed by Judge Titus on 29 August 200**7** though it was filed on or about 1 September 200**6**. We assume that it was actually signed on 29 August 2006, before it was filed.

record on appeal. Defendants objected, *inter alia*, to inclusion of the following documents:

[1] The plaintiff's Designation of Expert Witnesses should not be included in the Record on Appeal in that the designation was not considered by the trial court and is not material or relevant to the issues which are the basis of the appeal.

[2] The transcripts of the depositions of Carl Basamania, M.D., on September 26, 2006 and December 5, 2006 should not be included in the Record on Appeal or considered by the appellate court in that these materials were not submitted to the trial court for its consideration on the defendants' motion to dismiss which forms the basis of this appeal[.]

[3] The Notice of Filing and attached affidavits [of, *inter alia*, Dr. Basamania,] should not be included in the Record on Appeal in that they were not timely filed and were not considered by the trial court[.]

The trial court sustained defendants' objections and settled the record accordingly.

On 3 November 2008, plaintiff filed a Rule 11(c) Supplement to the Printed Record on Appeal ("the Supplement") with this Court. The Supplement included Plaintiff's Expert Witness Designation and the 5 December 2006 deposition of Dr. Basamania. The Supplement also included a 4 January 2007 affidavit from Dr. Basamania stating that on 5 October 2004, he had communicated his willingness to testify to his opinion that plaintiff's care fell below the applicable standard.

Also on 3 November 2008, plaintiff filed a petition for a writ of certiorari with this Court requesting review of the trial court's order settling the record on appeal on the basis that the order erroneously excluded, *inter alia*, the three documents enumerated above.

Rule 11(c) of the North Carolina Rules of Appellate Procedure states, in pertinent part:

If a party requests that an item be included in the record on appeal but not all other parties to the appeal agree to its inclusion, then that item shall not be included in the printed record on appeal, but shall be filed by the appellant with the printed record on appeal in three copies of a volume captioned "Rule 11(c) Supplement to the Printed Record on Appeal," along with any ver-

batim transcripts, narrations of proceedings, documentary exhibits, and other items that are filed pursuant to Rule 9(c) or 9(d); *provided that any item not filed, served, submitted for consideration, admitted, or for which no offer of proof was tendered, shall not be included.* Subject to the additional requirements of Rule 28(d), items in the Rule 11(c) supplement may be cited and used by the parties as would items in the printed record on appeal.

If a party does not agree to the wording of a statement or narration required or permitted by these rules, *there shall be no judicial settlement to resolve the dispute unless the objection is based on a contention that the statement or narration concerns an item that was not filed, served, submitted for consideration, admitted, or tendered in an offer of proof, or that a statement or narration is factually inaccurate. . . .*

. . . .

The functions of the judge in the settlement of the record on appeal are to determine whether a statement permitted by these rules is not factually accurate, to settle narrations of proceedings under Rule 9(c)(1) and *to determine whether the record accurately reflects material filed, served, submitted for consideration, admitted, or made the subject of an offer of proof, but not to decide whether material desired in the record by either party is relevant to the issues on appeal,* non-duplicative, or otherwise suited for inclusion in the record on appeal.

N.C.R. App. P. 11(c) (emphasis added).

A. Relevance

[1] Only the objection to the PEWD expressly mentions relevance, but defendants imply that each of disputed documents involving Dr. Basamania is irrelevant. Defendants argue that plaintiff's claim must rest only upon Dr. Ferlic's opinion, which discovery later indicated was formed *after* the complaint was filed, because plaintiff had initially identified only Dr. Ferlic as an expert for purposes of Rule 9(j) compliance. Defendants further argue that the documents related specifically to Dr. Basamania are irrelevant because "Dr. Basamania is not a retained expert witness, but instead will offer his testimony as Ms. Morris' subsequent treating physician."

We first note that the trial court is specifically *"not to decide* whether material desired in the record by either party is *relevant* to

the issues on appeal[.]" N.C.R. App. P. 11(c) (emphasis added). Review by the trial court on the grounds that the PEWD, deposition, and affidavit were not relevant to the appeal was improper.

Oddly, defendants' argument that Dr. Basamania is "not a retained expert witness" is based solely on a statement in the same PEWD which they now contend is irrelevant. In fact, Dr. Basamania's deposition testimony and affidavit go to the heart of the issues raised by this appeal, so we conclude they are clearly relevant.

B. Consideration by the Trial Court

Defendants also argue that the three documents should not be included on the record on appeal because they were either not submitted for consideration to the trial court or were not considered by the trial court at hearing on the motion to dismiss. As defendants' argument varies slightly as to each document, we will address each individually.

1. PEWD

[2] Defendants requested the trial court to exclude the PEWD on the grounds that it "was not considered by the trial court." However, review by the trial court on those grounds was improper.

According to *Carson v. Carson*:

Defendant's request [to settle the record on appeal] was improper because a party may only request the trial court "settle the record on appeal" if that party "contends that materials proposed for inclusion in the record or for filing therewith . . . were not filed, served, submitted for consideration, admitted, or made the subject of an offer of proof . . . ." [N.C.R. App. P. 11(c).] None of these contentions were made by either defendant or plaintiff and thus *review by the trial court would have been improper.*

177 N.C. App. 277, 280, 628 S.E.2d 439, 441 (2006). Contending that material is not *considered* by the trial court is different from contending that the material was not "*submitted* for consideration." *See* N.C.R. App. P. 11(c) (emphasis added). Although plaintiff initially filed the PEWD in the wrong county, defendants do not dispute that the PEWD was *submitted* for consideration to the trial court. Neither the record nor the briefs contain any indication that defendants ever objected to the PEWD on the basis that it was filed in the wrong county or that it was not *submitted* for consideration by the trial court at the time of the hearing on the motion to dismiss.

The PEWD was served on defendants, bringing it within the scope of documents allowed to be included in a Rule 11(c) Supplement to the Record on Appeal. N.C.R. App. P. 11(c) ("[A]ny item not filed, served, submitted for consideration, admitted, or for which no offer of proof was tendered, shall not be included."). Accordingly, we grant plaintiff's petition for writ of certiorari as to the PEWD and will consider it as part of our review.

2. Deposition of Dr. Basamania

**[3]** Defendants contended to the trial court that the deposition of Dr. Basamania was "not submitted to the trial court for its consideration[.]" However, plaintiff filed a Notice of Filing of Dr. Basamania's deposition on 9 January 2007 and alleges on appeal, without dispute by defendants, that he handed a copy of the deposition to the trial court at the hearing. We conclude that Dr. Basamania's deposition was submitted to the trial court for its consideration.

Furthermore, we perceive no prejudice to defendant in reviewing Dr. Basamania's deposition in this appeal because defense counsel attended the deposition and vigorously examined Dr. Basamania. In fact, during the deposition of Dr. Basamania, defendants' attorney acknowledged, "you have been identified as an expert witness in the case . . . ." *See Stines v. Satterwhite*, 58 N.C. App. 608, 613, 294 S.E.2d 324, 328 (1982) ("We note that the [plaintiff's] affidavit . . . in no way surprised [defendant]. Hence, we find no prejudice."). Accordingly, we grant plaintiff's petition for writ of certiorari as to the deposition of Dr. Basamania and consider it as part of our review.

3. Affidavit of Dr. Basamania

**[4]** Defendants contended to the trial court that the affidavit of Dr. Basamania "should not be included in the Record on Appeal in that [it was] not timely filed and [was] not considered by the trial court[.]" We have already rejected the proposition that a trial court has authority to review a request to exclude a document from the record on appeal simply on the basis that it had not been *considered* by the trial court. *See supra* Part II.B.1.

Defendants' brief on appeal explains that they deem the affidavit "not timely filed," because "there was no basis for the court to consider . . . materials that were not filed until after the court rendered a decision." There is no transcript in the record to support this statement; the record shows only that the affidavit was filed on the day of the hearing, 9 January 2007, while the trial court entered the order dismissing the action on 24 January 2007.

Even if the affidavit was filed after rendering of judgment, defendants cite no rule, nor are we aware of one, which states that an affidavit in opposition to a Rule 9(j) motion to dismiss is not timely filed unless it is filed before judgment is *rendered. See Precision Fabrics Group, Inc. v. Transformer Sales and Service, Inc.*, 344 N.C. 713, 719, 477 S.E.2d 166, 169 (1996) (error to exclude affidavit opposing summary judgment simply because it is not filed until the day of the hearing). "The announcement of judgment in open court is the mere rendering of judgment," and is subject to change before "entry of judgment." *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 214, 580 S.E.2d 732, 737 (2003) (citation and quotation marks omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). "A judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." 158 N.C. App. at 214, 580 S.E.2d at 737 (citation, brackets and quotation marks omitted). The affidavit was clearly filed on the day of hearing and well before *entry* of judgment. Defendants have not argued that the affidavit was not timely *served* upon them. The trial court should have overruled defendants' objection based on the timeliness of filing.

Because we conclude the documents referring to Dr. Basamania are relevant and were not untimely filed, we grant plaintiff's petition for writ of certiorari as to the PEWD, Dr. Basamania's affidavit and deposition. Accordingly, we will consider these documents as part of the record on appeal.[3]

### III. Proper Time to Identify Experts

[5] Defendants contend that the affidavit and deposition of Dr. Basamania are unavailing because "Dr. Basamania was not identified as a [Rule] 9(j) expert . . . prior to the deadline established by the Consent Discovery Scheduling Order." In effect, defendants argue that discovery sanctions for failure to timely identify experts are sufficient grounds to support the trial court's dismissal of plaintiff's complaint without consideration of the merits of plaintiff's substantive claims.

### A. Dates set by Consent Discovery Scheduling Order

Defendants specifically argue:

The Consent Discovery Scheduling Order in this case provided that the plaintiff 'shall identify any and all expert witnesses whom

---

3. Because the PEWD, the deposition of Dr. Basamania, and the affidavit of Dr. Basamania are dispositive of this appeal, we need not consider any of the other issues raised in plaintiff's writ of certiorari.

she may call to testify at trial by *April 1, 2005*.' Plaintiff was required to make all expert witnesses available for deposition by *June 1, 2006*. Plaintiff did serve Supplemental Answers to Defendants' Rule 9(j) Interrogatories on December 5, 2006, and filed that same with the court on January 9, 2007. This was obviously well outside the scope of the Consent Discovery Scheduling Order, and was entirely improper.

(Emphasis added.) The Consent Discovery Scheduling Order ("CDSO"), signed by the trial court on 29 August 2006, filed on or about 1 September 2006, and *attached to defendants' brief as an appendix* actually states:

2. By **June 1, 2006**, the plaintiff shall identify any and all expert witnesses whom she may call to testify at trial.

. . . .

4. Plaintiff will make all expert witnesses available for deposition by **August 1, 2006**.

(Emphasis in Original.)

As emphasized above, the dates which defendants contend to be dispositive as to whether Dr. Basamania may be considered as an expert witness for purposes of Rule 9(j) compliance are inaccurately stated in defendants' brief. However, we have no reason to believe that defendants have intentionally tried to mislead the court, since the correct dates appear in the appendix to their brief. For that reason, we assume the erroneous dates to be an oversight rather than an attempt to deliberately mislead this Court, but we admonish counsel to take particular care in quoting documents accurately, especially when their argument depends on it.

B. Analysis

Though defendants do not cite Rule 26 of the North Carolina Rules of Civil Procedure, they apparently base their timeliness argument on it. Rule 26 states, in pertinent part:

In a medical malpractice action . . . the judge shall . . . direct the attorneys for the parties to appear for a discovery conference. At the conference the court . . . shall . . . . [e]stablish an appropriate schedule for designating expert witnesses, consistent with a discovery schedule . . . ; and [e]stablish by order an appropriate discovery schedule designated so that, unless good cause is

shown at the conference for a longer time, and subject to further orders of the court, discovery shall be completed within 150 days after the order is issued . . . ; and [] [a]pprove any consent order which may be presented by counsel for the parties relating to [expert witness designation or discovery scheduling], unless the court finds that the terms of the consent order are unreasonable.

If a party *fails to identify an expert witness as ordered,* the court shall, upon motion by the moving party,[4] impose an appropriate sanction, which may include *dismissal of the action,* entry of default against the defendant, or exclusion of the testimony of the expert witness at trial.

N.C. Gen. Stat. § 1A-1, Rule 26 (f1) (2007) (emphasis and footnote added).

To the extent that the trial court's dismissal was based upon any failure of plaintiff to identify an expert witness in accordance with the CDSO, we do not agree that dismissal of plaintiff's complaint was an appropriate discovery sanction in this situation. First, sanctions are not appropriate when a discovery order requires a party to do the impossible. *Laing v. Liberty Loan Co.,* 46 N.C. App. 67, 71, 264 S.E.2d 381, 384 (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L. Ed. 2d 1255 (1958) (reversing dismissal of complaint for failure to comply with discovery order when foreign law prohibited compliance)), *disc. review denied,* 300 N.C. 557, 270 S.E.2d 109 (1980). It was clearly impossible for plaintiff to comply with a discovery order that required compliance before the order was signed by the trial judge on 29 August 2006 and filed on or about 1 September 2006.

Second, as to Dr. Basamania, plaintiff had *already* complied with the CDSO as to identification of him as an expert witness when the CDSO was entered.[5] Plaintiff identified Dr. Basamania, as re-

---

4. There is nothing in the record to indicate that defendants' motion to dismiss was based even in part upon a request for sanctions pursuant to Rule 26. However, while Rule 26(f1) appears to require "motion by the moving party," such a motion may not be necessary in all cases, as the North Carolina Supreme Court did not require such a motion in *Summey v. Barker,* 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) ("[D]efendants did not move for sanctions pursuant to Rule 26(f1); instead, they moved for summary judgment pursuant to Rule 56. Nevertheless, in the interests of justice and to avoid additional delay, we will review plaintiff's appeal pursuant to our authority under Rule 2 of the North Carolina Rules of Appellate Procedure.").

5. The fact that plaintiff had already identified Dr. Basamania as an expert witness before entry of the CDSO may be one reason why the parties agreed to enter into a consent order which set deadlines that had already passed when it was filed.

quired by Rule 26(f1), as an expert on 1 June 2006. This date was in accordance with the CDSO. Further, there is nothing in the record to indicate that Dr. Basamania was not made available for the taking of his deposition in a timely manner as required by the CDSO. Although his deposition was actually taken on 5 December 2006, the record does not indicate that he was not "available for deposition" prior to 1 August 2006. The record is silent as to the reason that his deposition was not taken sooner.

Third, defendants expressly waived the right to move for rejection of Dr. Basamania's 5 December 2006 deposition on the basis that it was not scheduled in accordance with the CDSO by clearly stipulating at the beginning of the deposition:

> Any objections of any party hereto as to notice of the taking of said deposition or as to the *time and place thereof* . . . shall be taken as *hereby waived*; . . . [and] all formalities and requirements of the statute with respect to *any formalities not herein expressly waived are hereby waived, especially including the right to move for the rejection of this deposition before trial* for any irregularities in the taking of the same, either in whole or in part *or for any other cause* . . . .

(Emphasis added.)

In light of the above, effectively dismissing plaintiff's complaint as a sanction for failure to comply with the discovery order, as defendants urge, would have been erroneous. Instead, we will consider the issues regarding Dr. Basamania's qualifications on the merits.

## IV. Treating Physician as a Rule 9(j) Expert

[6] Plaintiff contends that Rule 9(j) dismissal was improper because Dr. Basamania[6] "had provided an opinion that the care in questions [sic] was below the applicable standard of care and that he was willing to testify to that opinion prior to the suit being filed." As evidence, plaintiff relies on Dr. Basamania's deposition testimony that in October of 2004 he "indicated that [he] considered removing the clavicle to be below the standard of care[.]" Plaintiff also relies on an affidavit signed by Dr. Basamania on 4 January 2007 which stated: "My opinion that removal of or recommendation of removal of Ms. Morris' clavicle was below the standard of care has not changed since I first

---

6. Because we decide in plaintiff's favor on this issue, we need not address the parties' arguments regarding the affidavit and deposition of plaintiff's "retained expert," Dr. Ferlic.

began treating her and since I first spoke with [plaintiff's attorney] in October 2004. I am still willing to testify to those opinions." In response, defendants argue that, "[a]ccording to the plaintiffs's designation filed on June 2, 2006, Dr. Basamania was in fact not an expert, and had only agreed to testify as subsequent treating physician." We agree with plaintiff.

## A. Standard of Review

In reviewing an order dismissing a medical malpractice case for want of Rule 9(j) compliance, this Court has stated:

> [W]hen ruling on such a motion, a court must consider the facts relevant to Rule 9(j) and apply the law to them. Thus, a plaintiff's compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court, not a jury. A question of law is reviewable by this Court *de novo*."

*Phillips v. Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002) (citations omitted), *aff'd per curiam*, 357 N.C. 576, 597 S.E.2d 669 (2003).

## B. Controlling Law

Rule 9(j) states in pertinent part:

> Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless . . . [t]he pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007).

Plaintiff's complaint clearly asserts Rule 9(j) compliance on its face, but "it is also now well established that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008). What must be established in discovery is not whether the witness is "in fact not an expert[,]" but whether "there is ample evidence in th[e]

record that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that [the witness] would have qualified as an expert under Rule 702." *Trapp v. Maccioli*, 129 N.C. App. 237, 241, 497 S.E.2d 708, 711, *disc. review denied*, 348 N.C. 509, 510 S.E.2d 672 (1998).

## C. *Trapp* Analysis

The first prong of *Trapp* is to determine "the knowledge of the plaintiff at the time the pleading was filed[.]" 129 N.C. App. at 241, 497 S.E.2d at 711; *see also Thigpen v. Ngo*, 355 N.C. 198, 205, 558 S.E.2d 162, 167 (2002) ("Rule 9(j) expert review must take place before the filing of the complaint."). On 1 June 2006, plaintiff served defendants with an expert witness designation. The document stated that plaintiff

> hereby designates the following expert witnesses who may be called to testify at the trial of this action: 1. **Carl Basamania, M.D.** . . . **Durham, NC** . . . . Dr. Basamania is not a retained expert witness, but instead will offer his testimony as [plaintiff's] subsequent treating physician. . . . Dr. Basamania may offer testimony on the following: (1) [t]he standard of care for the treatment [of plaintiff's original injury] . . . . [and] (6) that *it was below the standard of care to perform a total claviculectomy `on [plaintiff.]*

(Bold font in original; italics added.)

When Dr. Basamania was subsequently deposed on 5 December 2006, he testified that he had formed an opinion that the standard of care had been breached and had expressed his willingness in October 2004 to testify to that fact. Dr. Basamania also signed an affidavit on 4 January 2007 stating that on 5 October 2004 he had communicated to plaintiff's attorney his willingness to testify to his opinion that plaintiff's care fell below the applicable standard. Defendants do not dispute the factual allegations of Dr. Basamania's affidavit or deposition as to the timing of his review of plaintiff's care, his formation of an opinion regarding the standard of care, or his willingness to testify. We conclude that plaintiff's care was reviewed by Dr. Basamania and he was willing to testify that plaintiff's care fell below the applicable standard before the complaint was filed. This fact was within plaintiff's knowledge at the time the complaint was filed.

The second prong of *Trapp* is whether "a reasonable person . . . would have believed that [the witness] would have qualified as an

expert under Rule 702." 129 N.C. App. at 241, 497 S.E.2d at 711. Rule 702 requires, in pertinent part:

In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2007).

At the time the complaint was filed, Dr. Basamania was an orthopedic surgeon, the same specialty as defendant Dr. Stocks. This fact would have caused a reasonable person to believe Dr. Basamania

would have met the requirements of Rule 702(b)(1)(a). Dr. Basamania is also Chief of Adult Reconstructive Shoulder Surgery and an Assistant Professor of Surgery in the Division of Orthopedic Surgery at Duke University Medical Center in Durham, North Carolina. At the time of the occurrence of the acts giving rise to the action, Dr. Basamania had been at Duke University Medical Center for four years. These facts would cause a reasonable person to believe that Dr. Basamania also met the requirements of Rule 702(b)(2).

We find no evidence which arose during discovery suggesting that Dr. Basamania could not be reasonably expected to qualify as an expert and no evidence that Dr. Basamania was ever unwilling to testify as to the standard of care. Even though the PEWD stated that Dr. Basamania was "not a retained expert witness, but instead [would] offer his testimony as [plaintiff's] subsequent treating physician[,]" discovery provided ample evidence "that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that [Dr. Basamania] would have qualified as an expert under Rule 702." *Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711. Rule 9(j) does not require that the person who gives an opinion as to the standard of care prior to filing the complaint be an expert witness whom the plaintiff has specifically retained for this purpose only. A treating physician may provide the review required by Rule 9(j) as long as he or she meets the qualifications of the rule. Accordingly, this assignment of error is overruled.

### V. Conclusion

Plaintiff's complaint facially complied with Rule 9(j). Upon consideration of Dr. Basamania's qualifications and opinion as to the standard of care, which were properly before the trial court, plaintiff's statement of compliance with Rule 9(j) was supported by the facts. Accordingly, we reverse the trial court order dismissing plaintiff's complaint for failure to comply with Rule 9(j) and remand to the trial court for further proceedings.

Reversed and Remanded.

Judges ELMORE and ERVIN concur.