**BRADEN v. LOWE**

[223 N.C. App. 213 (2012)]

MARION S. BRADEN, ADMINISTRATRIX OF THE ESTATE OF GREGORY ALAN BRADEN, M.D., DECEASED, Plaintiff-Appellant v. STEPHAN B. LOWE, M.D.; ORTHOPAEDIC SPECIALISTS OF THE CAROLINAS, P.A.; NOVANT HEALTH, INC.; FORSYTH MEMORIAL HOSPITAL, INC.; NOVANT HEALTH; FORSYTH MEDICAL CENTER; CAROLINA MEDICORP ENTERPRISES, INC.; PIEDMONT MEDICAL SPECIALISTS, P.L.L.C.; AND RICHARD S. MARX, M.D., Defendants-Appellees.

No. COA12-211

(Filed 6 November 2012)

### Medical Malpractice—Rule 9(j) certification—expert qualifications—reasonable expectation

The trial court erred by granting defendants' motion to dismiss in a medical malpractice action. Plaintiff could have reasonably expected Dr. Alleyne to qualify as an expert for purposes of N.C.G.S. § 1A-1, Rule 9(j).

Appeal by Plaintiff from judgment entered 21 July 2011 by Judge John O. Craig in Superior Court, Forsyth County. Heard in the Court of Appeals 25 September 2012.

*Cozen O'Connor, by Kimberly Sullivan and Christopher C. Fallon, Jr., for Plaintiff-Appellant.*

*Carruthers & Roth, P.A., by Norman F. Klick, Jr. and Robert N. Young, for Defendants-Appellees Stephan B. Lowe, M.D. and Orthopaedic Specialists of the Carolinas, P.A.*

McGEE, Judge.

Marion S. Braden, Administratrix of the Estate of Gregory Alan Braden, M.D., (Plaintiff) filed a complaint on 3 August 2009 against Stephan B. Lowe, M.D. (Dr. Lowe); Orthopaedic Specialists Of The Carolinas, P.A. (OSC); Novant Health, Inc.; Forsyth Memorial Hospital, Inc.; Novant Health; Forsyth Medical Center; Carolina Medicorp Enterprises, Inc.; Piedmont Medical Specialists, P.L.L.C.; and Richard S. Marx, M.D. Plaintiff's complaint set forth causes of action for negligence, wrongful death, and *res ipsa loquitur* arising from treatment Gregory Alan Braden, M.D. (Dr. Braden) received during December 2004 and early 2005. Pursuant to N.C. Gen. Stat. § 1A-1, Rules 9(j) and 12, Dr. Lowe and OSC (together, Defendants) filed a motion to dismiss Plaintiff's complaint on 18 April 2011. The trial court granted Defendants' motion to dismiss by order entered 21

BRADEN v. LOWE

[223 N.C. App. 213 (2012)]

July 2011. Plaintiff filed a voluntary dismissal with prejudice on 4 August 2011, dismissing her claims against Novant Health, Inc.; Forsyth Memorial Hospital, Inc.; Novant Health; Forsyth Medical Center; Carolina Medicorp Enterprises, Inc.; Piedmont Medical Specialists, P.L.L.C.; and Richard S. Marx, M.D. Plaintiff appeals.

## I. Facts

Plaintiff's complaint alleged the following: Dr. Braden suffered from diabetes, gout, and cellulitis, which affected his extremities. As a result of his condition, Dr. Braden sought treatment from Defendants on 2 December 2004. Dr. Lowe performed an incision and drainage procedure on Dr. Braden's left great toe. Dr. Braden's toe became infected and Dr. Braden was later diagnosed with a MRSA staph infection. Dr. Braden was placed on six weeks of intravenous antibiotic treatment on 7 January 2005. On 15 January 2005, Dr. Lowe amputated Dr. Braden's left great toe, which had grown worse as a result of the infection.

In his pre-operative and post-operative orders regarding the amputation of Dr. Braden's toe, Dr. Lowe did not include Dr. Braden's intravenous antibiotic treatments. Plaintiff alleged that, as a result of Dr. Lowe's orders, Dr. Braden did not receive his intravenous antibiotics from 14 January to 23 January. Plaintiff alleged that Dr. Lowe went to Dr. Braden's hospital room and apologized for not having continued Dr. Braden's antibiotic treatment plan. On 13 August 2007, Dr. Braden died from respiratory and cardiac conditions that Plaintiff alleged were "brought on in part by the ravages of the infections that [Dr. Braden] had suffered and the physical immobility that resulted."

## II. Plaintiff's Expert and Defendants' Motion to Dismiss

Plaintiff's complaint contains the following allegation:

> The medical care which is the subject of this Complaint has been reviewed by a health care provider who Plaintiff reasonably believes will qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care complained of did not meet the applicable standards of care.

Defendants filed an interrogatory seeking the identification of Plaintiff's expert witness and Plaintiff filed a response identifying Dr. William F. Alleyne II (Dr. Alleyne). Dr. Alleyne was deposed on 7 March 2011. After Dr. Alleyne's deposition, Defendants filed their motion to dismiss Plaintiff's complaint on the following grounds:

**BRADEN v. LOWE**

[223 N.C. App. 213 (2012)]

4. Plaintiff's Complaint violates Rule 9(j) as Plaintiff's Rule 9(j) expert is not reasonably expected to qualify as an expert witness pursuant to Rule 702 of the North Carolina Rules of Evidence.

5. Rule 702 provides that if a party against whom testimony is offered as a specialist, the expert witness must specialize in the same or similar specialty which includes within its specialty the performance of the procedure that is the subject of the Complaint and have prior experience treating similar patients.

6. Plaintiff's Rule 9(j) expert, Dr. William Alleyne, does not specialize in the same or similar specialty as . . . Defendants.

7. Specifically, Defendant Dr. Lowe is an orthopedic surgeon. However, Plaintiff's Rule 9(j) expert specializes in internal medical, pulmonary diseases and critical care medicine. Dr. Alleyne testified at his deposition that internal medicine, pulmonary diseases and critical care are not the same or similar specialty as orthopedic surgery and he has never specialized in the practice of orthopedics or similar specialty.

The trial court's judgment granting Defendants' motion to dismiss contains the following language:

[T]he Court finds as fact and concludes as law that Defendants' Motion should be allowed as William Alleyne, M.D., Plaintiff's Rule 9(j) expert was not a person who could have reasonably been expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence.

Moreover, after the [c]ourt communicated its decision in the Motion, the Plaintiff filed a Motion for Reconsideration pursuant to rules 58 and 60 of the North Carolina Rules of Civil Procedure, which, in the interest of expediency, the [c]ourt will treat as timely filed. The [c]ourt has carefully considered . . . Plaintiff's Motion for Reconsideration, along with the accompanying materials and affidavit. The [c]ourt finds that . . . [P]laintiff's proposed expert, Dr. Alleyne, practiced in a similar specialty to that of . . . [D]efendant Dr. Lowe, insofar as the procedure for restarting antibiotics following an auto-stop, but the record does not establish that [Dr.] Alleyne participated in such activity during the twelve months preceding January 15, 2005. In its discretion, the [c]ourt will deny the Motion for Reconsideration. The Court will allow Dr. Alleyne's supplemental affidavit, which accompanied . . . [P]laintiff's motion

for reconsideration, to be made a part of the record in this case, in the event of an appeal.

## III. Issues on Appeal

Plaintiff raises on appeal the issues of whether: (1) the trial court erred in granting Defendants' motion to dismiss because Plaintiff "met the expert certification requirements of Rule 9(j) prior to the filing of her complaint[;]" (2) the trial court erred in granting Defendants' motion to dismiss on the grounds that Plaintiff's expert did not participate in a similar procedure within the year prior to the acts giving rise to Plaintiff's complaint "because Plaintiff's expert did in fact participate in such a procedure multiple times during the prior year[;]" (3) the trial court erred in granting Defendants' motion to dismiss because Rule 9(j) does not actually contain a "one-year participation requirement[;]" (4) the trial court erred in granting Defendants' motion to dismiss because the motion was not timely filed and "any objections to the qualifications of the Rule 9(j) expert should have been deemed waived[;]" and (5) the trial court erred in granting Defendants' motion to dismiss because "Plaintiff properly pled ordinary negligence[.]"

## IV. Standard of Review

N.C. Gen. Stat. § 1A-1, Rule 9(j) provides the following requirements for the pleading of a medical malpractice action:

> Medical malpractice.—Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 *shall be dismissed unless*:
>
> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under

Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

Upon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court for a judicial district in which venue for the cause of action is appropriate under G.S. 1-82 or, if no resident judge for that judicial district is physically present in that judicial district, otherwise available, or able or willing to consider the motion, then any presiding judge of the superior court for that judicial district may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension. The plaintiff shall provide, at the request of the defendant, proof of compliance with this subsection through up to ten written interrogatories, the answers to which shall be verified by the expert required under this subsection. These interrogatories do not count against the interrogatory limit under Rule 33.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2011) (emphasis added).

"Whether the pleader could reasonably expect the witness to qualify as an expert under Rule 702 presents a question of law and is therefore reviewable *de novo* by this Court." *Trapp v. Maccioli*, 129 N.C. App. 237, 241 n. 2, 497 S.E.2d 708, 711 n. 2 (1998) (citation omitted). *See also Phillips v. Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002) (citations omitted) ("[A] plaintiff's compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court, not a jury. A question of law is reviewable by this Court *de novo*."). "This Court inquires as to whether [the] plaintiff reasonably expected [the experts] to qualify as expert witnesses pursuant to Rule 702, *not* whether they ultimately will qualify." *Grantham v. Crawford*, 204 N.C. App. 115, 118, 693 S.E.2d 245, 248 (2010) (emphasis added). " 'In other words, were the facts and circumstances known or those which should have been known to the pleader such as to cause a reasonable person to believe that the witness would qualify as an expert under Rule 702.' " *Id.* at 118-19, 693 S.E.2d 245 (citations omitted).

Further, " 'it is also now well established that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate.' " *Morris v. Southeastern Orthopedics Sports Med. & Shoulder Ctr.*, 199 N.C. App. 425, 437, 681 S.E.2d 840, 849 (2009) (citation omitted).

> What must be established in discovery is not whether the witness is "in fact not an expert[,]" but whether "there is ample evidence in th[e] record that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that [the witness] would have qualified as an expert under Rule 702."

*Id.* 437-38, 681 S.E.2d 840 (citation omitted).

N.C. Gen. Stat. § 8C-1, Rule 702 provides the following concerning the qualification of experts to testify in medical malpractice actions:

> (b) In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:
>
> (1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
>
> > a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or
> >
> > b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.
>
> (2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:
>
> > a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active

clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) Notwithstanding subsection (b) of this section, if the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the action, must have devoted a majority of his or her professional time to either or both of the following:

(1) Active clinical practice as a general practitioner; or

(2) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the general practice of medicine.

(d) Notwithstanding subsection (b) of this section, a physician who qualifies as an expert under subsection (a) of this Rule and who by reason of active clinical practice or instruction of students has knowledge of the applicable standard of care for nurses, nurse practitioners, certified registered nurse anesthetists, certified registered nurse midwives, physician assistants, or other medical support staff may give expert testimony in a medical malpractice action with respect to the standard of care of which he is knowledgeable of nurses, nurse practitioners, certified registered nurse anesthetists, certified registered nurse midwives, physician assistants licensed under Chapter 90 of the General Statutes, or other medical support staff.

N.C. Gen. Stat. § 8C-1, Rule 702 (2011).

## V. Analysis

In the present case, Plaintiff's complaint contains a rule 9(j) certification. Thus, it remains to be determined whether Plaintiff, at the time of filing her complaint, could reasonably have had an expecta-

tion that Dr. Alleyne would qualify as an expert at a subsequent trial. Plaintiff contends that she had a "reasonable expectation of compliance with the three basic elements of Rule 702" because:

1) Dr. Alleyne is a licensed health care provider in this State; 2) Dr. Alleyne specializes in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and he has prior experience treating similar patients; and 3) during the year immediately preceding January 2005, Dr. Alleyne devoted a majority of his professional time to the active clinical practice of a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and has prior experience treating similar patients.

We first note that, on appeal, Plaintiff and Defendants appear to have a difference of opinion concerning the characterization of the procedure giving rise to this complaint. Defendants argue that the procedure was the amputation of Dr. Braden's toe. Plaintiff argues that the procedure was the continuance of antibiotics following Dr. Braden's surgery. The trial court found that Dr. Alleyne "practiced in a similar specialty to that of . . . [D]efendant Dr. Lowe, insofar as the procedure for restarting antibiotics following an auto-stop[.]" Plaintiff does not contend the trial court erred in that finding, nor do Defendants. We conclude the trial court's determination that Drs. Alleyne and Lowe practiced in a similar specialty with respect to the procedure governing antibiotics was without error.

The trial court's reasoning for granting Defendants' motion to dismiss turned not on the specialization of the procedure, but rather on whether Dr. Alleyne had participated in such a procedure within the relevant time frame: "[T]he record does not establish that [Dr.] Alleyne participated in such activity during the twelve months preceding January 15, 2005." Thus, it appears to this Court that the trial court found that Plaintiff could not reasonably expect Dr. Alleyne to qualify as an expert based solely on the N.C.G.S. § 8C-1, Rule 702 requirement that the expert must have performed the procedure within the year preceding the events giving rise to Plaintiff's complaint. We disagree with the trial court's conclusion.

Dr. Alleyne's deposition contained the following exchanges:

Q. Okay. So therefore since certainly 2000 you've never been in Dr. Lowe's position where you had a patient who was on antibiotics that you took to the OR whose antibiotics were stopped

**BRADEN v. LOWE**

[223 N.C. App. 213 (2012)]

because you took them to the OR and you were then faced with the decision whether to restart the antibiotics; correct?

A. I disagree.

Q. Since 2000?

A. Since 2000 I have been in a situation, several situations, where we took a patient for bronchoscopy; following the bronchoscopy, we had to rewrite all of the orders and, therefore, had to rewrite antibiotics that had been stopped because I took a patient to a procedure.

Q. That's not my question. My question is: Since 2000 have you taken a patient to the OR?

A. That is correct; I have not.

Q. Okay. So since 2000 you've never taken a patient to the OR; correct?

A. That is correct.

Q. So since 2000 you never took a patient to the OR who was on antibiotics; correct?

A. That is correct.

Q. So since 2000 you've never taken a patient who - to the OR who is on antibiotics whose antibiotics were stopped because of your surgical procedure; correct?

A. That is correct.

Q. So, therefore, since 2000 you've never had a patient who was on antibiotics that you took to the OR whose antibiotics were stopped because you took them to the OR and you were then faced with the decision of whether to restart the antibiotics—

MS. SULLIVAN: Objection.

Q. ---correct?

MS. SULLIVAN: Objection.

A. Correct, to the extent that "taken to the OR."

Dr. Alleyne also submitted a supplemental affidavit, which the trial court made a part of the record, in which Dr. Alleyne stated:

BRADEN v. LOWE

[223 N.C. App. 213 (2012)]

> In 1999 or 2000 I became the Director of Respiratory Therapy at Piedmont Medical Center and regularly performed various inpatient invasive procedures, including bronchoscopies, which I continue to do to this day and did in 2004. These invasive procedures brought into play the automatic stoppage of medications including antibiotics. In 2004, I worked full time in the ICU Department at Piedmont Medical Center. As a result, on a daily basis in 2004 I had to re-start intravenous antibiotics in patients whose antibiotics had been discontinued by hospital auto-stop policies due to invasive procedures or other operative procedures. During 2004, on at least a weekly basis I reordered the intravenous antibiotic Vancomycin, which has the same indication as Daptomycin for treatment of MRSA infections.

Thus, it is clear that Dr. Alleyne stated that he had performed auto-stop antibiotic procedures "since 2000," including "on a daily basis in 2004[.]" We are persuaded that Dr. Alleyne's statements, "since 2000" and "on a daily basis in 2004," are sufficient to give Plaintiff a reasonable expectation that Dr. Alleyne performed the procedure during the twelve months preceding 15 January 2005 and thus would qualify as an expert pursuant to Rule 702. Based on Dr. Alleyne's statements, we find that Plaintiff could have had a reasonable expectation that Dr. Alleyne would qualify as an expert. We stress that our ruling does not address the actual qualification of Dr. Alleyne as an expert under Rule 702 as such a determination has not yet been made by the trial court; rather, our ruling strictly addresses whether Plaintiff could have reasonably expected Dr. Alleyne to qualify for purposes of N.C.G.S. § 1A-1, Rule 9(j). Because the trial court erred in determining that Plaintiff could not have had a reasonable expectation that Dr. Alleyne would qualify as an expert, we hold the trial court erred in granting Defendants' motion to dismiss. In light of this holding we do not address Plaintiff's remaining arguments.

Reversed and remanded.

Judges BEASLEY and THIGPEN concur.