DIETZ, Judge.
 

 *66
 
 Plaintiff Jocelyn Kennedy appeals the dismissal of her medical malpractice claims against Dr. Kelly Prettyman and her employer for failure to comply with Rule 9(j) of the Rules of Civil Procedure. Dr. Prettyman is a general dentist and the malpractice claims against her relate to the practice of general dentistry. But the experts Kennedy identified in the Rule 9(j) certification are a periodontist and an oral surgeon, neither of whom regularly practices in the field of general dentistry.
 

 As explained below, the record supports the trial court's determination that Kennedy could not reasonably have expected these experts to testify to the standard of care applicable to Dr. Prettyman. But, as Dr. Prettyman concedes, the trial court's order does not contain the necessary findings of fact required by our precedent. Accordingly, we vacate the trial court's order and remand for further proceedings. On remand, the trial court, in its discretion, may enter a new order based on the existing record, or may conduct any further proceedings that the court deems necessary for the just resolution of this matter.
 

 Facts and Procedural History
 

 Dr. Kelly C. Prettyman is a general dentist who works for Dr. Charles Ferzli, DDS, P.A. d/b/a Smiles of Cary. In August 2013, Jocelyn Kennedy consulted Dr. Prettyman about a toothache. At the appointment, Kennedy told Dr. Prettyman that she previously had undergone surgery and radiation treatment for oral cancer. Dr. Prettyman diagnosed Kennedy with a severe periodontal defect and referred Kennedy to Dr. Samuel DeAngelo, a periodontist who specialized in treating these conditions.
 

 Dr. DeAngelo developed a treatment plan for Kennedy that involved extracting several of her teeth and placing multiple implants. Later, Dr. Prettyman met with Dr. DeAngelo to review the treatment plan and agreed to order and place a temporary partial denture for Kennedy after the surgery. This was the full extent of Dr. Prettyman's involvement in the initial treatment planning. Although the proposed surgery typically poses risks of osteoradionecrosis and other healing issues in
 
 *17
 
 patients with prior oral radiation therapy, Dr. Prettyman did not discuss these risks with Kennedy or with Dr. DeAngelo.
 

 On 19 September 2013, Dr. DeAngelo extracted eleven of Kennedy's teeth and placed seven implants. That same day, Dr. Prettyman delivered and placed a denture after the surgery was complete.
 

 *67
 
 By early October 2013, Kennedy's surgical wound on her lower gums opened up. When Dr. DeAngelo could not close up the wound, he referred Kennedy to an oral surgeon, Dr. Jeffrey Jelic, who sent her to the Center for Hyperbaric Medicine at Duke University to receive hyperbaric oxygen treatments. Kennedy's treating physicians at Duke diagnosed her with osteoradionecrosis. Today, Kennedy continues to suffer severe post-surgical complications, including difficulty speaking and eating, permanent tooth loss, distortion of her face, and a high pain level.
 

 On 22 July 2016, Kennedy filed a malpractice suit against Dr. Prettyman and her employer, as well as Dr. DeAngelo and others involved in her treatment. The complaint alleged that Dr. Prettyman was negligent when she placed the temporary denture in Kennedy's mouth, without support, immediately after her teeth were extracted; failed to discuss the relevant risks with Kennedy beforehand; and failed to refer Kennedy to another provider with more experience treating patients with a history of oral cancer treatment. Kennedy's complaint also included expert witness certifications as required by Rule 9(j) of the North Carolina Rules of Civil Procedure.
 

 At the time Kennedy filed her complaint, she designated only two experts: Dr. Jelic, the oral surgeon who referred her to Duke, and Dr. Jeffery Thomas, her periodontist. Both experts hold dental licenses and are board-certified in their respective specialties. During depositions, both experts testified that Dr. Prettyman had breached the standard of care for general dentists.
 

 Dr. Jelic testified that oral surgeons "do the same thing" general dentists do but that Dr. Prettyman's general dentistry practice "is not the same specialty as [his] practice." Similarly, Dr. Thomas testified he did not "have the exact same practice" as Dr. Prettyman, explaining he "did procedures that the general dentist would do" but that he "wasn't doing general dentistry." Both experts testified they did not hold themselves out as general dentists.
 

 Both experts also testified to having some experience working with dentures. Dr. Jelic explained that his practice prohibits him from actually making dentures-a task he defers to general dentists-but he does "deliver them all the time." He also replied affirmatively when asked whether he ever modified dentures, saying it is "part of what oral surgeons do. ... You realign them. You take away pressure sores. That's very common." Dr. Thomas testified that he fabricates temporary dentures and that he did so multiple times in the year preceding Kennedy's
 
 *68
 
 surgery. When asked about delivering and placing temporary dentures, Dr. Thomas testified that his role ran the "gamut from doing it independently completely myself, attaching it to temporary implants, to having the general dentist come in there and just watch me, to having a general dentist come in, deliver, and adjust the bite, and then I check it."
 

 Following a mediated settlement, Kennedy voluntarily dismissed with prejudice her claims against all defendants except Dr. Prettyman and her employer. On 10 January 2018, Dr. Prettyman and her employer moved to dismiss under Rule 9(j) and moved for summary judgment. Following a hearing, the trial court entered an order granting Defendants' motion to dismiss and declining to hear the motion for summary judgment as moot. Kennedy timely appealed.
 

 Analysis
 

 Kennedy challenges the trial court's dismissal of her claims against Dr. Prettyman and her employer for failure to comply with Rule 9(j) of the Rules of Civil Procedure. Whether a litigant satisfied Rule 9(j) in a medical malpractice action is a question of law that this Court reviews
 
 de novo
 
 .
 
 Braden v. Lowe
 
 ,
 
 223 N.C. App. 213
 
 , 217,
 
 734 S.E.2d 591
 
 , 595 (2012).
 

 Rule 9(j) is a special pleading requirement for medical malpractice actions. The rule "serves as a gatekeeper, enacted by the
 
 *18
 
 legislature, to prevent frivolous malpractice claims by requiring expert review before filing of the action."
 
 Estate of Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.
 
 ,
 
 222 N.C. App. 396
 
 , 401,
 
 731 S.E.2d 500
 
 , 504 (2012). The relevant provision for our analysis is Rule 9(j)(1), which requires the complaint to specifically assert "that the medical care ... ha[s] been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1).
 

 Even if a complaint facially complies with the requirements of Rule 9(j), the trial court may dismiss it "if subsequent discovery establishes that the certification is not supported by the facts, at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable."
 
 Estate of Wooden,
 

 222 N.C. App. at 403
 
 ,
 
 731 S.E.2d at 506
 
 .
 

 But, importantly, if the trial court determines that a complaint is subject to dismissal on this ground, "the court must make written findings of fact to allow a reviewing appellate court to determine whether
 
 *69
 
 those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination."
 

 Id.
 

 With this standard in mind, we turn to the trial court's order in this case. The critical facts relevant to this Court's review are not disputed by the parties: Dr. Prettyman is a general dentist. The health care treatment Dr. Prettyman provided to Kennedy was consistent with the care provided by a general dentist-Dr. Prettyman saw Kennedy for severe tooth pain; referred Kennedy to a periodontist; and, after the periodontist extracted a number of Kennedy's teeth, placed a temporary denture to replace the extracted teeth.
 

 The two experts on which Kennedy relied in the Rule 9(j) certification are not general dentists. Dr. Jelic is an oral surgeon. Dr. Jelic does not practice general dentistry and testified that, as an oral surgeon, he does not practice the "same specialty" as Dr. Prettyman. Similarly, Dr. Thomas is a periodontist, a health care professional who treats diseases of the gums and other structures supporting the teeth. He does not practice general dentistry and likewise testified that, as a periodontist, he does not have the "same practice" as Dr. Prettyman.
 

 The parties also concede that this case is governed by Rule 702(b) of the Rules of Evidence, which addresses expert testimony against a "specialist." N.C. Gen. Stat. § 8C-1, Rule 702(b). Although there are separate evidentiary standards in Rule 702(c) for expert testimony against a "general practitioner," and a general dentist like Dr. Prettyman certainly could be thought of as a "general practitioner" in the ordinary sense, this Court has interpreted that term to apply only "to physicians" and not to those practicing in the fields of "dentistry, pharmacy, optometry, chiropractic, and nursing."
 
 FormyDuval v. Bunn
 
 ,
 
 138 N.C. App. 381
 
 , 387,
 
 530 S.E.2d 96
 
 , 100 (2000).
 

 We thus examine the standard for expert testimony against a specialist in Rule 702(b). The relevant portion of the rule states that experts can testify about the applicable standard of care for a specialist only if the experts "[s]pecialize in the same specialty" or "[s]pecialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients." N.C. Gen. Stat. § 8C-1, Rule 702(b)(1).
 

 Kennedy first asserts that "[d]entistry is its own specialty, and therefore Dr. Jelic and Dr. Thomas, both of whom practice within the specialty of 'dentistry' and were licensed dentists at the time of the initial pleading in this case, qualify as experts against Dr. Prettyman." This argument is
 
 *70
 
 squarely precluded by our precedent.
 
 See
 

 Roush v. Kennon
 
 ,
 
 188 N.C. App. 570
 
 , 574-76,
 
 656 S.E.2d 603
 
 , 606-07 (2008). In
 
 Roush
 
 , this Court held that a general dentist practices a different specialty than an oral surgeon.
 

 Id.
 

 Under
 
 Roush
 
 , Dr. Prettyman, a general dentist, Dr. Thomas, a
 
 *19
 
 periodontist, and Dr. Jelic, an oral surgeon, all practice in separate, distinct specialties.
 

 Kennedy next argues that, even if the two experts were not specialists in general dentistry, they can testify to the standard of care for a general dentist because Kennedy established that these experts specialize in a similar specialty; perform the same procedures that Dr. Prettyman performed in this case; and have prior experience treating similar patients.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 702(b)(1)(b). Here, Kennedy relies heavily on
 
 Roush
 
 , where this Court permitted a general dentist to testify to the standard of care for an oral surgeon. But in this argument, Kennedy downplays the key holding from
 
 Roush
 
 : although the expert in that case was a general dentist, he "possessed significant experience in the field of oral surgery."
 
 188 N.C. App. at 575
 
 ,
 
 656 S.E.2d at 607
 
 . Indeed, the expert chose to make oral surgery a large part of his practice, although many general dentists do not. As the Court observed, "there is a clear difference between a general dentist, and one who chooses to also practice oral surgery."
 
 Id.
 
 at 576,
 
 656 S.E.2d at 607
 
 .
 

 The experts in this case appear readily distinguishable from the expert in
 
 Roush
 
 . There is no evidence in the record that either Dr. Thomas or Dr. Jelic chose to also practice general dentistry as well as their primary specialty. To the contrary, their deposition testimony and other evidence indicates that these experts did the opposite; they eschewed general dentistry and instead focus their skills on a separate specialized field, either periodontics or oral surgery. Moreover, the record before this Court indicates that, in these separate specialties, these experts treat patients in a different context than a general dentist-focusing on patients with particular conditions that fit their specializations. This raises legitimate concerns that the standard of care these experts apply in their more specialized practices would differ from the standard applicable to a general dentist who sees patients with a broad range of conditions.
 

 As a result, we are persuaded that, on this record, the trial court could have made findings that would have supported a determination that these experts did not qualify to testify to the standard of care applicable to a general dentist. But, as Dr. Prettyman concedes, the trial court did not make the findings required by our precedent, and that, in turn, prevents this Court from engaging in meaningful appellate review of the
 
 *71
 
 trial court's determination.
 
 Estate of Wooden
 
 ,
 
 222 N.C. App. at 403
 
 ,
 
 731 S.E.2d at 506
 
 . Dr. Prettyman asserts that this Court should "remand the case to the trial court to have the trial court revise the Order to include findings of fact."
 

 We agree that the appropriate disposition of this case is to vacate the trial court's order and remand. On remand, the trial court, in its discretion, may enter a new order based on the existing record, or may conduct any further proceedings that the court deems necessary for the just resolution of this matter.
 

 Conclusion
 

 We vacate and remand the trial court's order for further proceedings consistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges STROUD and MURPHY concur.